**STATE of Missouri, Respondent,**

v.

**Leola MEEKS, Appellant.**

**No. ED 78453.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 30, 2001.

---

Edward B. Nangle, St. Louis, MO, for Appellant.

Alan M. Key Jr., Richard A. Harper, Asst. Pros. Attys., St. Louis, MO, for Respondents.

GEORGE W. DRAPER III, Judge.

Leola Meeks (hereinafter, "Meeks") appeals the trial court's judgment denying her motion brought pursuant to Section 542.301 RSMo (1995)[1] for the return of two safes and their contents seized from her residence. Meeks claims the trial court erred in denying her motion in that there was no substantial competent evidence to support the judgment because the safes and their contents were her personal property and not that of her son, Maurice Green (hereinafter, "Green"). We affirm.

Green was arrested by Maryland Heights police officers on December 6, 1999, for trafficking and possession of controlled substances. Upon police questioning, Green indicated there was money in a safe at Meeks' residence, where he had a room in the basement. On December 7, 1999, Green gave written permission to search Meeks' residence, describing the safe, the location of the safe, and a combination to open the safe. The police passed this information along to Detective William Verhaeghe (hereinafter, "Det. Verhaeghe") and Sergeant Stephen Sack (hereinafter, "Sgt. Sack"), members of the St. Louis County Drug Task Force. Neither Det. Verhaeghe nor Sgt. Sack spoke directly with Green about the safe or its location.

Det. Verhaeghe and Sgt. Sack proceeded to Meeks' residence to search for the safe, and Green remained in the police van outside. Before entering the residence, Det. Verhaeghe showed Green the consent form and confirmed his signature on the form. Two people were at the Meeks residence when Det. Verhaeghe and Sgt. Sack arrived. One person confirmed Green had a room in the basement and

---

1. All further statutory references are to RSMo (1995) unless otherwise noted.

contacted Meeks to inform her the police were there to search her residence.

Sgt. Sack spoke to Meeks on the phone and advised her that Green had been arrested and given consent to search her residence. Meeks responded that she didn't know anything about any safes in the residence, they were welcome to search, and they could take any safe they found. Sgt. Sack relayed this information to Det. Verhaeghe who conducted the search. Meeks remained on the phone during the search.

Green indicated the safe would be in a rear bedroom, in a closet on the floor. Det. Verhaeghe proceeded to a bedroom, later determined to be Meeks' bedroom, and retrieved a small safe from the closet. He removed the safe from the residence and took it to the Maryland Heights Police Department.

Approximately one hour later, Sgt. Sack received a phone call from the police department informing him that the combination Green provided to open the safe was not compatible with the type of safe seized and would not work. Sgt. Sack spoke to Green who indicated there was another safe in the residence and that both of the safes belonged to him. Det. Verhaeghe and Sgt. Sack returned to Meeks' residence and seized a second, larger safe and took it back to the police department. It is unclear from the record where specifically the second safe was found in the residence.

Det. Verhaeghe obtained two search warrants to open the safes. Both he and Sgt. Sack were present when the safes were opened forcibly. The first safe contained approximately $30,000 cash wrapped in duct tape, some papers, and a watch. The second safe contained approximately $25,800 in cash, some bullets, and a gold cross. The police did not find any narcotics in the residence or in the safes.

On December 8, 1999, Det. Verhaeghe interviewed Meeks about the contents of the safes. Initially, Meeks advised she couldn't describe the contents of the safes, but later indicated the safes belonged to her daughter and one safe contained $25,000. Meeks explained that her daughter received an insurance settlement and a loan from a mortgage company. Meeks also said Green put $6,000 in the safe which was compensation from working for his aunt's catering business. Meeks did not provide any documentation to verify the source of the money in the safes.

Meeks filed a motion with the criminal court in which Green's case was pending requesting that the court declare the property seized not subject to forfeiture and order it returned to her. At the outset of the hearing, the trial court inquired about the form of Meeks' motion, which was captioned "State of Missouri v. Leola Meeks" and titled "Motion to Suppress Evidence and for the Return of Seized Property." Meeks' trial counsel explained that she was proceeding under Section 542.301.3 which authorized her to file such motion and that he captioned it in that way. The State did not object to the form of the caption or to the motion, and the court allowed Meeks to proceed with the hearing.

Det. Verhaeghe and Sgt. Sack testified about the search of Meeks' residence, the seizure of the safes, and the contents found therein as detailed above. Meeks testified the safes and their contents were her personal property. Meeks denied the contents were Green's property, and therefore not, following his criminal conviction, subject to forfeiture pursuant to Section 513.600 *et seq.* Meeks' daughter also testified about the contents of the safes. After a full hearing on the merits of her motion,

the trial court denied Meeks' motion to recover the property. Meeks appeals.

Meeks' sole point on appeal alleges the trial court erred in denying her motion to return the safes and their contents to her in that there was no substantial evidence to support the trial court's ruling. In addition to contesting the trial court's judgment, Meeks raises several "issues" in her point relied on related to the underlying search of her residence and the circumstances surrounding the seizure of the two safes.[2]

Review of a court-tried case is limited, and the trial court's decision will not be overturned unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In weighing the evidence, we accept as true all evidence that is favorable to the prevailing party, including all inferences reasonably deducible therefrom, and we disregard any contradictory evidence. *In the Matter of Walker*, 875 S.W.2d 147, 151 (Mo.App. E.D.1994). We defer to the trial court's superior ability to assess the credibility of witnesses. *Flowers v. Roberts*, 979 S.W.2d 465, 473 (Mo.App. E.D.1998).

The State brought a motion to dismiss this appeal which was taken with the case. The motion alleged, *inter alia*, the caption of the case was incorrect because Meeks was never a defendant in Green's criminal case and never legally joined as a party. During oral argument before this Court,

Meeks conceded that she was never a defendant below and she never formally intervened or joined as a party in the criminal proceeding. Moreover, Meeks' motion for the return of her property did not indicate that she was proceeding pursuant to Section 542.301.3.

There is a clear statutorily established procedure for dealing with property seized by law enforcement officers. *State v. McAllister*, 767 S.W.2d 362 (Mo.App. E.D. 1989). Section 542.301 deals with the disposition of unclaimed seized property and forfeiture to the State. *McAllister* states that 542.301.2 provides for "forfeiture of property utilized in the commission of felonies, property which cannot be legally possessed, or property which any statute authorizes or directs to be seized."[3] *Id.* at 364. Thus, *McAllister* recognizes that under Section 542.301.3 "a motion may be filed by a claimant requesting that the property be declared not forfeitable and for an order delivering it to the moving party." *Id.* This section does not provide any guidance as to when the motion must be filed, i.e., during the pendency of the underlying criminal proceeding or after its completion, or within a specific time frame. *Id.*

■ Recognizing that Meeks' motion was captioned improperly and poorly drafted, trial counsel clarified for the trial court that she was proceeding under Section 542.301.3, and the State offered no objection to the form of the caption or to

---

**2.** When drafting points on appeal, we remind the parties to comply with Rule 84.04(d) and *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). Compliance with Rule 84.04 "is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Myrick v. Eastern Broadcasting, Inc.*, 970 S.W.2d 885, 886 (Mo.App. S.D.1998). Failure to comply with these requirements

can result in dismissal of the appeal. Rule 84.04(d)(1).

**3.** In *State v. McAllister*, the Court discussed Section 542.301 as it was written in 1986. Section 542.301 has subsequently been renumbered, but with no substantive changes to the text. Therefore, we will refer to the current version of Section 542.301 for clarity in analysis throughout the opinion.

the motion. Meeks was allowed to proceed with the hearing and we find that she had standing to proceed. The State's motion to dismiss is denied.

Meeks makes several collateral arguments concerning the underlying search and seizure that need not be addressed here. The primary issue is whether Meeks had a right to possession of the safes and their contents and whether they were subject to forfeiture pursuant to Section 542.301.3. Under Section 542.301, the trial court must first determine ownership of the property at issue, then determine if the property is subject to forfeiture.

In *State v. Patchen*, 652 S.W.2d 265 (Mo.App. W.D.1983) the Western District affirmed in part and reversed in part a factually analogous case. In *Patchen*, Patchen was arrested for suspicion of drug possession while driving a friend's car. *Id.* at 267. After obtaining a warrant for the vehicle, a search uncovered, *inter alia*, narcotics, firearms, and currency. *Id.* Patchen pleaded guilty to two counts of possession of a controlled substance. *Id.*

Subsequently, the State filed a motion to dispose of the property it held pursuant to Section 542.301.1 and 542.301.2. Patchen filed a motion to claim right to possession of the property held by the State and sought return of the firearms and some of the currency. A hearing was held on both motions at which the State argued that all of the items should be subject to forfeiture as substances used by the owner or with the owner's consent as a means of committing felonies. In support of its position, the State produced evidence that the seized items were in Patchen's possession at the time of his arrest, and he had been convicted of possession of a controlled substance in connection with the seizure.

The only evidence Patchen presented was his own testimony, explaining how he came to possess the firearms and curren-cy. The trial court denied the State's motion seeking forfeiture because there was no evidence that the items seized were used in the commission of felonies. The trial court also denied Patchen's motion for return of the property, noting it found his testimony "lacking in credibility and not worthy of belief." *Id.* at 267. Patchen appealed.

The Western District noted from the outset, "Because we must accept the trial court's determination that [Patchen's] testimony was not worthy of belief, we disregard that testimony entirely and consider only the effect of his undisputed possession of the items." *Id.* at 267. The court recognized the rule that exclusive possession and control of personal property is *prima facie* evidence of ownership and anyone else claiming the property must shoulder the burden of proof. *Id.*, citing *Ross v. Pendergast*, 353 Mo. 300, 182 S.W.2d 307, 309 (1944). The question was whether Patchen had the initial burden of proving ownership or whether the State had the burden of rebutting the presumption that the possessor is the owner.

Finding no caselaw on point in Missouri, the Western District looked to California and New York courts for support. After discussing *People v. Superior Court of Alameda County*, 100 Cal.App.3d 154, 160 Cal.Rptr. 663 (1979)(holding the subject property is presumed to be owned by the defendants until the state presents evidence supporting a finding that these parties did not in fact own the property) and *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir.1972)(finding unconstitutional an ordinance placing the burden on the claimant from whose possession the property was taken to prove he had lawful title or property right because of the substantial degree of governmental arbitrariness which resulted from such a burden), the Western District followed these jurisdictions and

concluded that because one in possession is presumed to hold title, the State, like any other contestor of that title, must bear the burden of showing that the possessor's title is defective. *Id.* at 268.

In *Patchen,* the Western District held that even if Patchen was not the true owner of the property, he still held rights as the possessor of the property which were superior to the entire world except the true owner. *Id.* There, the State not only failed to dispute Patchen had possession, but it offered no evidence that anyone else had a superior right to the property. Therefore, the court held the State failed to meet its burden of proving either the State or another person was entitled to ownership, and therefore, Patchen was entitled to retain the property subject to any liabilities federal or state law would impose upon him as a convicted felon. *Id.*

In the case at bar, we must defer to the trial court's credibility determination which requires us to completely disregard Meeks' testimony, as well as that of her daughter, who also claimed ownership of some of the money. Therefore, the State must bear the burden of proving Meeks' title to the safes and their contents was defective as required by *Patchen.*

The State produced several pieces of evidence about who was the true owner of the safes and their contents. Det. Verhaeghe testified that another Maryland Heights police officer told him Green stated the safes and their contents belonged to him. When executing the search, Det. Verhaeghe verified that Green signed the form and indicated he owned the safe.

■ Meeks' counsel argues Green's statements as relayed by Det. Verhaeghe were hearsay, and therefore inadmissible. However, where there is no objection until after the evidence is given and the objecting party does not move to strike the evidence, the question of admissibility is not reviewable. *Kilgore v. Linville,* 733 S.W.2d 62, 64–65 (Mo.App. E.D.1987). Meeks' counsel objected one time after Det. Verhaeghe made the hearsay statements, did not make any other hearsay objection throughout his remaining testimony, and failed to seek a remedial measure from the trial court. Therefore, we cannot review the admissibility of these statements and find they constitute substantive evidence of Green's ownership of the safes seized.

■ Moreover, a prior inconsistent statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial. *Elliot v. Kesler,* 799 S.W.2d 97, 103 (Mo.App. W.D. 1990). Sgt. Sack testified Meeks denied having any knowledge of any safes in her house several times during their phone conversation. Det. Verhaeghe further testified Meeks initially denied any knowledge about the contents of the safes, but later explained to him the safes belonged to her daughter. These prior inconsistent statements provided substantive evidence of Meeks' denial of ownership which was sufficient to meet the State's burden that Meeks' title was defective.

Based on the foregoing, we find there was substantial evidence to support the trial court's judgment denying Meeks' motion for the return of her property. The trial court's judgment is affirmed.

GARY M. GAERTNER, Sr., P.J. and LAWRENCE G. CRAHAN, J., concur.