**STATE of Missouri, Plaintiff–Appellant,**

v.

**ONE HUNDRED FIFTY–TWO THOUSAND, SEVEN HUNDRED SIXTY, AND 00/100 DOLLARS ($152,760.00), IN UNITED STATES CURRENCY, Defendant–Respondent.**

No. 24636.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 7, 2002.

Don W. Crank, Springfield, for appellant.

Sue Chrisman, William H. McDonald & Associates, P.C., Springfield, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

The State of Missouri appeals the trial court's judgment that money found during a traffic stop was not subject to forfeiture under § 542.301.[1] Because we find § 542.301 is not applicable to the facts of this case, we affirm the trial court's judgment.

Highway Patrol Trooper Matt Funderburk stopped a rental car driven by Patrick Merow ("Merow") on Interstate 44 in Greene County for speeding.[2] Because Merow and his passenger gave conflicting stories about why they were traveling and because there were fast food wrappers and a map in the front of the car, Officer Funderburk became suspicious and asked and received permission to search the vehicle. During the search Funderburk saw several sealed food packaging containers, including a vitamin box that had cellophane inside. Funderburk asked and received Merow's permission to open the vitamin box and found two bundles of currency inside which had been wrapped in cellophane. Funderburk then searched the other packages (which had all been glued shut) and found twenty-nine bundles of currency wrapped in cellophane, totaling $152,760. The fact that the currency was wrapped in cellophane indicated to Funderburk that it was wrapped for the purpose of masking a drug odor. When Funderburk asked Merow about the currency, he said he did not know it was there and that it was not his.

Funderburk gave Merow the Miranda warning in his patrol car, although Merow was not arrested.[3] Merow then followed Funderburk to the highway patrol headquarters, where all of the money was found and seized by the highway patrol. A canine sniff dog was called in and alerted on the money which was in a cupboard at headquarters and on the car Merow was driving.[4] No drugs were found and Merow has never been charged with any criminal activity.[5]

When interviewed by narcotics investigator Daniel P. Banasik of the Missouri Highway Patrol, Merow originally stated that he had been in Chicago, Illinois and found the money in a Wal–Mart shopping cart in a Wal–Mart parking lot in Chicago.

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. We note that Appellant's Statement of Facts contains no transcript references. Appellant is admonished of Rule 84.04(i) requiring specific page references to the legal file or transcript for all statements of fact. All rule references are to Supreme Court Rules (2002), unless otherwise stated.

3. According to Funderburk and the Highway Patrol Officer who interviewed Merow, Merow was never under arrest and was "free to go" at any time although his car was searched at the highway patrol headquarters.

4. The dog alerting supposedly indicated the presence of narcotics.

5. The record is unclear whether Merow was even charged with speeding.

When the search of the vehicle revealed recent receipts from the Boston, Massachusetts area, Merow admitted that he found the money in a shopping cart at a Wal–Mart store in Boston and he repacked it in the grocery boxes. When asked by Banasik about the possibility that the money was illegally gained, Merow stated that there was a strong possibility it could have been drug money. Merow constantly maintained that it was his money and, according to Banasik's report, "questioned methods to retain the currency." Merow contacted Banasik numerous times after he was released to determine how to get the money returned to him.

The state filed a "Verified Motion for Forfeiture of Unclaimed Property Pursuant to Legal Seizure." The state maintained that it was making a claim under § 542.301, that the money was "unclaimed" and was obtained "pursuant to the traffic stop of a person who possessed said personality while engaged in the violation of Missouri Law, to wit: speeding." The state specifically stated that the claim was not being filed pursuant to the Criminal Activity Forfeiture Act. The state averred that Merow "was in possession of said property but has asserted no legal claim against" the same and the property was presumed unclaimed.

Merow filed a response stating that the state unlawfully seized the currency from him, that the currency was not subject to forfeiture, and requested that the currency be returned to him. Merow also filed a separate "Motion For Immediate Return Of Illegally Seized Currency," requesting the currency be returned to him. The case was tried to the court which issued a judgment ordering the currency, along with any accrued interest, be returned to Merow. The state appeals.

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)[6] governs review of this case and requires this court to affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Chandler v. Hemeyer*, 49 S.W.3d 786, 790 (Mo.App. W.D.2001). This court shall defer to the trial court's factual findings because of the trial court's superior ability to judge the credibility of the witnesses. *Id.* The evidence and all reasonable inferences therefrom shall be viewed in the light most favorable to the trial court's decision, and all contrary evidence and inferences must be ignored. *Id.*

The only relevant portion of the statute under which the state claims the currency can be forfeited is § 542.301.2, which states:

> Weapons, tools, devices, and substances other than motor vehicles, aircraft or watercraft, used by the owner or with the owner's consent as a means for committing felonies other than the offense of possessing burglary tools in violation of section 569.180, RSMo, and property, the possession of which is an offense under the laws of this state or which has been used by the owner, or used with the owner's acquiescence or consent, as a raw material or as an instrument to manufacture or produce anything the possession of which is an offense under the laws of this state, or which any statute authorizes or directs to be seized, other than lawfully possessed weapons seized by an officer incident to an arrest, shall be forfeited to the state of Missouri.

The state claims that the money is a "tool" or "device" used as a means to commit

---

**6.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form, in Rule 84.13(d).

felonies, and, therefore, must be forfeited to the state. Specifically, we first address the state's second point relied on, which states:

> THE TRIAL COURT ERRED IN FINDING THAT THE SEIZED MONEY IS NOT A TOOL OR DEVICE USED AS A MEANS FOR COMMITTING FELONIES IN THIS STATE, AND THAT THE MONEY IS OF THE KIND OF PROPERTY SUBJECT TO FORFEITURE PURSUANT TO SECTION 542.301.2, RSMo.[7]

■■■ To prove forfeiture under § 542.301.2 there must be clear and convincing evidence that the property in question is subject to foreclosure under that section. *Chandler*, 49 S.W.3d at 792; § 542.301.5. "Forfeitures are disfavored in Missouri, however, and are administered only when they advance the letter and the spirit of the law." *State v. Residence Located at 5708 Paseo*, 896 S.W.2d 532, 537 (Mo.App. W.D.1995). Thus, we must first determine whether the money was a tool or device for committing felonies. When interpreting words used in a statute, we must " 'ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning.' " *Chandler*, 49 S.W.3d at 790 (*quoting Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995)).

Statutes are construed in such a way as to avoid unreasonable, oppressive, or absurd results. Words contained in a statute should be given their plain and ordinary meaning. Provisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized. Related clauses are considered when construing a particular portion of a statute. Courts, in interpreting a particular statute, properly consider other statutes involving similar or related subject matter. All consistent statutes relating to the same subject are in *pari materia* and are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals."

*State v. Sledd*, 949 S.W.2d 643, 645–46 (Mo.App. W.D.1997) (citations omitted).

We determine that the currency is not a tool or device as used in § 542.301.2. An everyday understanding of the meaning of "tool" or "device" would not include currency. More specifically, a dictionary definition of these terms does not include currency.

"Tool," as a noun, is defined in three general ways in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2408 (1986): 1) as an instrument used by hand; 2) as an object used in carrying on work; and 3) as one who allows himself to be used by another. The first and third definitions obviously would not apply to currency.

---

7. In order to comply with Rule 84.04(d), a point relied on must "(A) identify the trial court ruling or action that the appellant challenges, (B) state concisely the legal reasons for appellant's claim of reversible error, and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." *Hunt v. Hunt*, 65 S.W.3d 572, 576 (Mo.App. S.D. 2002). The state's second point relied on violates Rule 84.04(d) in that it fails to state the legal reasons for its claim of reversible error and explain why, in the context of this case, those legal reasons support its claim. When a point relied on violates Rule 84.04(d), that point preserves nothing for appellate review. *Bentlage v. Springgate*, 793 S.W.2d 228, 231 (Mo.App. S.D.1990). Because the state's contentions can be understood from the argument section of its brief, we exercise our discretion to review the state's claim for plain error. *See Great Southern Sav. & Loan Ass'n v. Wilburn*, 887 S.W.2d 581, 583 (Mo. banc 1994).

The state argues that the second definition of tool applies to currency. The full definition relied upon by the state is as follows:

[A]n implement or object used in performing an operation or carrying on work of any kind: an instrument or apparatus necessary to a person in the practice of his vocation or profession ... something that serves as a means to an end: an instrument by which something is effected or accomplished.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2408 (1986). A full reading of the applicable portion of the statute indicates that the legislature intended to encompass "tools" in the sense of objects that enable one to carry on work or complete a task. The word "tools" is used twice in the same portion of § 542.301, as it excepts the felony of possessing "burglary tools in violation of section 569.180 ..." § 542.301.1. Section 569.180 makes it a crime to possess "any tool, instrument or other article adapted, designed or commonly used for ... forcible entry into premises ..." § 569.180.1. One would expect the term to be used in the same sense throughout § 542.301.1. Thus, the legislative intent by using the term "tools" was to allow forfeiture of things such as pliers, hammers, screwdrivers, etc. Currency would not fit within the plain meaning of the term "tools" and as it is used in the statute.

Likewise, currency is not a "device." The definition of device that must have been intended by the use of that term in § 542.301.2 is, "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 618 (1986). The currency found in Merow's vehicle was not equipment or a mechanism. It is not a device as that term is used in the statute.[8]

It must be noted that when the legislature wants to allow for the forfeiture of currency because of its use with illegal drugs, it knows how to do so. The Criminal Activity Forfeiture Act ("CAFA") provides that "[a]ll property of every kind used or intended for use in the course of, derived from, or realized through criminal activity is subject to civil forfeiture." § 513.607. Certainly "all property of every kind" would include currency. In addition, The Narcotics Drug Act provides for forfeiture, by using the procedures in CAFA, of "[e]verything of value furnished, or intended to be furnished, in exchange for a controlled substance, ... all proceeds traceable to such an exchange, and all moneys, negotiable instruments, or securities used, or intended to be used, to facilitate any violation [of the Narcotics Drug Act] ...."[9] § 195.140.2(1). The failure of the legislature to specifically include currency in § 542.301, when it clearly knows how to allow for its forfeiture, indicates that it did not intend to include that type of property in the parameters of § 542.301. It is significant to note that the state did not file for forfeiture pursuant to § 513.617.1, which provides that "property of persons arrested, detained or appre-

8. We are aware that in *State v. Patchen,* 652 S.W.2d 265 (Mo.App. W.D.1983), money was included in the items sought to be returned to the claimant. Likewise, in *State v. Meeks,* 59 S.W.3d 531 (Mo.App. E.D.2001) a claimant sought the return of two safes which contained cash. It is not indicated in those opinions whether the particular issue of whether currency is a tool or device was presented to either of those courts.

9. The state did not bring their action pursuant to either of these statutes, probably because a guilty plea or conviction is required to forfeit property under these statutes. *See State v. Eicholz,* 999 S.W.2d 738, 742–43 (Mo.App. W.D.1999). No such requirement is attached to forfeiture under § 542.301.2. *Chandler,* 49 S.W.3d at 794. Thus, these statutes are of no assistance to the state in the present case.

hended and not subsequently charged is not subject to forfeiture for that arrest, detention or apprehension." § 513.617.1. It is clear that forfeiture under that provision would fail because there must be a criminal charge and a conviction of guilt. *Residence Located at 5708 Paseo*, 896 S.W.2d at 538.

Furthermore, interpreting the statute as the state contends requires us to render § 542.301.5 as meaningless. The provision states: "If the evidence is clear and convincing that the property in issue is in fact of a kind subject to forfeiture under this subsection, the judge shall declare it forfeited and order its destruction or sale" and clearly indicates that the legislature intended that not all "property" be included in this statute. It is doubtful the legislature would intend for currency to be destroyed or sold, as it would be unnecessary. The court did not err in finding that currency is not a tool or device. Point II is denied.

■ The state next contends that the trial court erred in finding that the money was not "unclaimed property" and that Merow was the presumed owner of the money based on his possession of the money. Section 542.301.1(4) requires that property not subject to forfeiture that comes into the custody of an officer and not subsequently returned to the claimant must be disposed of by a judge ordering the property delivered to "the person or persons entitled to possession, if any." Thus, the issue is whether the trial court erred in finding that Merow was entitled to possession of the money.

■ Merow was in possession of the money until highway patrol officers seized it by taking it out of the food boxes. The person in possession of property is presumed to hold title as exclusive possession and control is prima facie evidence of ownership. *State v. Patchen*, 652 S.W.2d 265,

267–68 (Mo.App. W.D.1983). *See also State v. Meeks*, 59 S.W.3d 531, 535 (Mo. App. E.D.2001). *Patchen* is directly on point. In *Patchen*, even though the trial court determined that the defendant's testimony was not worthy of belief and the appellate court disregarded the testimony entirely, the effect of the defendant's undisputed possession of the items entitled him to a presumption of ownership. *Id.* Even if Merow was not the true owner of the property, because he possessed it until the officers interfered, "he holds rights, as the possessor, superior to all the world except the true owner." *Id.* at 268.

Thus, the state bore the burden of proving either that Merow did not have possession of the money, or that there was another person with a superior right to the property. *Id.* The trial court found, and we agree, that the state did not meet this burden of overcoming the presumption of ownership. The trial court found that Merow "was in exclusive possession of the property prior to it being seized by the Missouri Highway Patrol." There can be no dispute to this fact. The state admitted to as much in its pleadings. Said another way, but for the traffic stop, the property would have been in the exclusive possession of Merow. Furthermore, no evidence was presented of another person who had superior rights to the money. Certainly, the state can not contend that a public official can stop a person for a traffic offense (or any other reason), take the property from the possessor of property, and then claim the property is "unclaimed" upon being taken by the officer. To so hold would completely negate the legislative intent that a charge and conviction must be present for a claim under § 513.607. The state would never need charges or convictions to appropriate private property.

The state argues that Merow's initial denial of ownership indicate that his title to the money is defective. The state cites no authority in support of its proposition, and without cited authority or a statement as to why there is no authority, the argument is deemed abandoned on appeal. *See In re Marriage of Spears,* 995 S.W.2d 500, 503 (Mo.App. S.D.1999). Additionally, given our standard of review, we defer to the trial court's superior ability to judge the credibility of the witnesses and view the evidence and all reasonable inferences in the light most favorable to the trial court's decision. There is substantial evidence that Merow consistently claimed the property as his own in his conversation with Officer Banasik. Thus, the state failed to rebut the presumption that Merow was the owner of the money and thus entitled to have it returned to him.

The state's argument that Merow did not perfect any claim to the money because he did not follow Missouri, Illinois, or Massachusetts statutes concerning giving notice that he found the money is again unsupported by any authority. As stated above, because Merow was in possession of the money, he had ownership rights above all others except the true owner. The statutes cited by the state serve merely to require a finder of property to take steps to notify the true owner that the property has been found so that person may take steps to reclaim the property. *See* § 447.010; 765 ILL. COMP. STAT. 1020/27 (2001); and MASS. ANN. LAWS ch. 134, § 1 (2002). Nothing in these statutes makes the possessor's ownership contingent upon following the statutes and notifying the true owner. Failure to follow the statutes may effect the finder's ownership when the true owner exerts his interest, but nothing is expressed or implied in the statutes that is contrary to or changes the long-established principle that possession is prima facie evidence of ownership. The state's argument is not persuasive.

Because Merow possessed the currency, he was presumed to be the owner. The state failed to rebut this presumption. Section 542.301.1(4) specifically provides that after a hearing, the judge shall order the property delivered to the person or persons entitled to possession. The trial court did not err in ordering the money returned to Merow. The judgment is affirmed.

PREWITT, P.J., and SHRUM, J., concur.