**William PENDERGRAFT, Plaintiff–Appellant**

v.

**Clyde STEWART, Defendant– Respondent.**

**No. 25393.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 21, 2004.

Stuart H. King, McDonald Hosmer King & Royce, P.C., Springfield, for appellant.

Laurel Stevenson, Franke Schultz & Mullen, P.C., Springfield, for respondent.

JOHN E. PARRISH, Judge.

William Pendergraft (plaintiff) appeals the judgment in a negligence action he brought against Clyde Stewart (defendant). Following a jury trial, judgment was entered for defendant. Plaintiff contends the trial court committed instructional error in defining the standard of care required in boat operation. This court reverses and remands for new trial.

Plaintiff participated in a "pro-am" fishing tournament on Table Rock Lake. It was promoted by Central Pro–Am Association, Inc. A pro-am tournament teams a professional fisherman with an amateur fisherman. The professional fisherman provides and operates the boat used by the team. Plaintiff participated in the tournament as an amateur, defendant as a professional.

On March 16, 1997, the second day of the tournament, plaintiff was assigned by the tournament promoter to fish with defendant. Plaintiff and defendant left the starting point at the Port of Kimberling on Table Rock Lake. After leaving the "idle zone" near the dock from which they departed, defendant accelerated his boat to speeds between 60 and 70 miles per hour. After about 15 minutes into the ride, defendant's boat was in the vicinity of other boats. Plaintiff and defendant observed the wakes from the other boats. Plaintiff felt a thud. Defendant's boat went airborne. It made an uncontrolled spin or turn of about 180 degrees. Plaintiff was propelled out of the passenger seat into defendant.

Questions asked to and answers given by defendant at deposition were read to the jury:

Q. And would you read for the jury, your answer?

. . .

A. (As read.) "We were just driving along, and I had trimmed the engine down just a little bit to smooth the ride out in the turn, because there were other boat wakes, you know, other boats that were in the—ahead of me. And I still don't know to this day, but it did 180 degrees. What it did, the bow hooked the water, and did a 180–degree

turn, and the turn—the way the turn was turning left, and therefore the motion of the boat, the way we were going, brought him" And that's the end of the page.

Q. Read the first two lines of the next page, just so we've got your whole answer.

A. Okay. (As read.) "Brought him from the driver's seat—out of the passenger's seat, over to my side, and then he hit me."

Plaintiff told the jury there was a very violent collision; that he had been sitting in one spot and he awoke sitting in another spot. He had been holding onto rails on the boat but had been unable to keep his grip on the rails because of the impact. Plaintiff testified that he was knocked unconscious; that the first thing he saw when he regained consciousness was the dash in front of his face. Plaintiff was sitting on part of defendant's body with the other part of defendant's body draped over the side of the boat.

Both plaintiff and defendant were injured. Defendant was unable to drive the boat. Plaintiff drove the boat back to the location near where they had started. Plaintiff had not operated a boat with controls like the ones on defendant's boat. Defendant was able to instruct plaintiff on how they worked.

At trial plaintiff tendered the following instruction defining the term "negligent" or "negligence":

### Instruction Number A

The term "negligent" or "negligence" as used in these instructions means the failure to use the highest degree of care. The phrase "highest degree of care"

means that degree of care that a very careful person would use under the same or similar circumstances.

The trial court refused the tendered instruction. Instead, the trial court instructed the jury, over plaintiff's objection:

### Instruction Number 5

The term "negligent" or "negligence" as used in these instructions means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful person would use under the same or similar circumstances.

Plaintiff's sole point on appeal is directed to the trial court giving Instruction No. 5 and refusing Instruction No. A. Plaintiff argues this was error "in that Missouri Revised Statutes Section 306.125 provides that every person shall operate a motorboat in a 'careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care' and excerpts from this standard only a motorboat or other boat race authorized under Section 306.130 and the fishing tournament in which the parties participated was not a motorboat or other boat race."

Section 306.125[1], as applicable here, provides:

1. Every person shall operate a motorboat, vessel or watercraft in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

---

**1.** References to § 306.125 are to RSMo Cum. Supp.1995. References to § 306.130 are to RSMo 1994.

. . .

4. Subsection 1 of this section shall not apply to a motorboat or other boat race authorized under section 306.130.

Section 306.130.1 provides:

The Missouri state water patrol shall authorize the holding of regattas, motorboat or other watercraft races, marine parades, tournaments, parasail operations or exhibitions on any waters of this state when it has determined that said event will not create conditions of excessive danger for the participants, observers or operators of other watercraft nor unduly disrupt navigation. It shall adopt and may, from time to time, amend regulations concerning the safety of motorboats and other watercraft and persons thereon, either observers or participants. Whenever a regatta, motorboat or other watercraft race, marine parade, tournament, parasail operation or exhibition is proposed to be held, the person in charge thereof shall, at least fifteen days prior thereto, file an application with the Missouri state water patrol for permission to hold the regatta, motorboat or other watercraft race, marine parade, tournament, parasail operation or exhibition, and it shall not be conducted without authorization of the Missouri state water patrol in writing.

Defendant's Exhibit D, a three-page exhibit that includes the application of Central Pro–Am Association, Inc., for a Pro–Am Bass Fishing Tournament, was admitted in evidence. The application was approved and, with the approval, issued as a permit for the event. The permit bears the signature of the Commissioner of the Missouri State Water Patrol. The name of the event was Central Pro–Am Association, Inc.'s 1997 Table Rock Pro–Am Bass Tournament. Its dates were March 15–16, 1997, from 7:00 a.m. until 3:00 p.m. The types of watercraft participating in the event were identified as "Bass Boats." The estimated number of boats expected to participate was 150. The permit states, "All watercraft laws and safe boating rules are to be observed."

Defendant argues that the exception afforded by § 306.125.4 to the requirement that the standard of care for boat operation is the highest degree of care applies to all events for which § 306.130 require approval by the water patrol. This court disagrees.

■■■ This is a matter of statutory construction. " 'Statutory construction is a matter of law, not a matter of discretion . . . . and no deference is given to the trial court's determination.' " *Sloan v. Bankers Life & Cas. Co.,* 1 S.W.3d 555, 561 (Mo. App.1999). As this court explained in *State v. One Hundred Fifty–Two Thousand, Seven Hundred Sixty, and 00/100 Dollars ($152,760.00), in U.S. Currency,* 87 S.W.3d 374 (Mo.App.2002):

When interpreting words used in a statute, we must " 'ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning.' " *Chandler [v. Hemeyer],* 49 S.W.3d [786] at 790 [ (Mo.App.2001) ] (*quoting Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo.banc 1995)).

*Id.* at 378. "When statutory language is clear, courts must give effect to the language as written." *M.A.B. v. Nicely,* 909 S.W.2d 669, 672 (Mo. banc 1995).

■■ The statutory language of §§ 306.125.1 and .4 and 306.130.1 is abundantly clear. Persons operating motorboats, vessels, or watercraft are required to exercise the highest degree of care with the exception of persons engaged in motor-

boat or other boat races authorized by § 306.130. Defendant was not engaged in a motorboat or other boat race when the accident that is the basis of plaintiff's lawsuit occurred. Defendant was participating in a fishing tournament, the conduct of which had been approved by the Missouri water patrol. The express language of § 306.125 requires approval by the water patrol of a number of different kinds of events held on the waters of this state. In addition to "motorboat or other watercraft race[s]" the water patrol must receive applications for and approve regattas, marine parades, tournaments, parasail operations, or exhibitions in order for those events to be held.

■ The event in which plaintiff and defendant were participating when the accident occurred was a tournament. Had the legislature intended tournaments to be classified as a "motorboat or other watercraft race," there would have been no reason to specify "tournaments" as events for which approval of the water patrol is required. "The legislature is presumed not to enact meaningless provisions." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). *See also Mid–America Dairymen, Inc. v. Payne*, 990 S.W.2d 648, 654 (Mo.App.1999); *Parrott v. HQ, Inc.*, 907 S.W.2d 236, 240 (Mo.App.1995).

The trial court erred as a matter of law in instructing the jury that defendant owed an ordinary degree of care in operating the boat in which plaintiff was passenger rather than the highest degree of care as required by § 306.125.1. Here, as in *Stonger ex rel. Stonger v. Riggs*, 85 S.W.3d 703, 704 (Mo.App.2002), the giving of an instruction requiring a lesser degree of care than required by law is prejudicial to a plaintiff in a case in which a verdict for defendant was returned. Plaintiff's point

is granted. The judgment is reversed. The case is remanded for a new trial.

RAHMEYER, C.J., and BATES, J., concur.