William ANDRESEN, et al., Appellants,

v.

BOARD OF REGENTS OF MISSOURI WESTERN STATE COLLEGE, et al., Respondents.

No. WD 59415.

Missouri Court of Appeals, Western District.

Aug. 7, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2001.

Application for Transfer Denied Nov. 20, 2001.

582

Daniel Neal McPherson, Jefferson City, for appellant.

Stephen James Briggs, St. Joseph, for respondent.

Before THOMAS H. NEWTON, P.J., PAUL M. SPINDEN, C.J. and JAMES M. SMART, Jr., J.

THOMAS H. NEWTON, Presiding Judge.

## I. Factual and Procedural Background

Appellants are active and retired faculty members of Missouri Western State College (MWSC). The Honorable Thomas J. Brown, III, of the Circuit Court of Cole County entered an order certifying Appellants' action as a class action. The class is defined as all persons who were employed by MWSC and who were members of Missouri State Employee's Retirement System (MOSERS) during the 1992–93 academic school year and who earned, prior to July 1, 1992, unused accumulated sick leave that has not been counted by MWSC for purposes of reporting to MOSERS. The Respondents are MOSERS and MWSC. MOSERS is a statutory retirement system that provides retirement income and other benefits for state employees.

This appeal arose after the trial court ruled against the Appellants, finding that they were not entitled to a declaratory judgment and are, therefore, not entitled to receive benefits for accumulated sick leave prior to the 1992–1993 academic year. Before 1988, faculty members were members of the Public School Retirement System of Missouri (PSRS). In 1988–89, many of the faculty, administration, staff, and employees of MWSC elected to became members of MOSERS, but some teachers elected to stay in the PSRS. But those retiring under the MOSERS plan have the benefit of utilizing the amount of creditable service accrued based on unused accumulated sick leave. The accumulated sick leave is determined by a formula pursuant to § 104.601 or § 104.1021.2, which entitles the members of MOSERS to receive, upon the member's retirement, additional creditable service for the member's unused accumulated sick leave as reported to MOSERS by the member's employer.

Section 104.601 was enacted in 1982 and provided that for each eighty-four days of unused accumulated sick leave earned the employee gained one-twelfth of a year of creditable service. It was amended in 1984 to provide for one-twelfth of a year of creditable service for each forty-two days of unused accumulated sick leave, and in 1990 it was amended again allowing for one-twelfth of a year of creditable service for each twenty-one days of unused accumulated sick leave earned by an employee.

Then in 1999, the legislature passed §§ 104.800 through 104.1093. In particular § 104.1006 created a new retirement system referred to as the Year 2000 Plan. This new plan replaced the previous plan herein referred to as the Closed Plan.[1] The Closed Plan under § 104.1003(7) is "a benefit plan created pursuant to [Chapter 104] and administered by a system prior to July 1, 2000." It precluded persons employed on or after July 1, 2000, from joining the Closed Plan, but those who were members prior to July 1, 2000, could continue to be covered by and remain in the Closed Plan.[2] Those employed on or after July 1, 2000, are members of the Year 2000 Plan .[3] The Appellants in this class are all members of the Closed Plan. Members retiring under the Closed Plan have their creditable service calculated under § 104.601, while § 104.1021.2 governs the way the creditable service is calculated under the Year 2000 Plan. These statutes governing MOSERS generally entitle a member of MOS-

ERS to receive, upon the member's retirement, additional creditable service for the member's unused accumulated sick leave as reported to MOSERS by the member's employer.

Section 104.601 governs the amount of additional service to which retirees under the Closed Plan are entitled for their unused accumulated sick leave. It allows members who retire under the Closed Plan to "be credited with all his unused sick leave as certified by his employing agency. When calculating years of service, each member shall be entitled to one-twelfth of a year of creditable service for each twenty-one days of unused accumulated sick leave earned by him."

MWSC, however, capped unused sick leave prior to 1990 to 960 hours. An employee could not earn more than 960 hours of sick leave, not even for credit toward his retirement. During the 1989–90 academic year, MWSC increased the cap on unused sick leave to 1,008 hours. Again, an employee could not accumulate more than 1,008 hours of unused sick leave. This sick leave was for actual use and the employees were not allowed to accumulate sick leave as creditable service to be used toward their retirement plan. Then during the 1992–93 academic year, MWSC changed the sick leave policy. The cap of 1,008 hours of sick leave available for actual use remained, but all additional hours accrued for unused sick leave were report-

---

1. § 104.1003(7).

2. *Id.*

3. The only relevant difference between the two plans for purposes of this appeal is the manner in which the two plans compute a retiree's creditable years of service for accumulated unused sick leave as governed by § 104.601 under the Closed Plan and § 104.1021.2 under the Year 2000 Plan. § 104.1015, RSMo Cum.Supp.1999. The Appellants in this case are all members of the

Closed Plan, but can elect to switch to the Year 2000 Plan. Appellants who retired on or before July 1, 2000, must make an election by July 1, 2001. § 104.1015.2, RSMo Cum.Supp. 1999. All Appellants who were active employees after July 1, 2000, must make this election one month before their retirement. § 104.1015.3, RSMo Cum.Supp.1999. Because the Appellants' claim arises under the Closed Plan, we will only address the applicable statutes governing the Closed Plan.

ed to MOSERS for the employees' retirement. In other words, the employee could earn up to 1,008 hours of sick leave that could be taken at any given time, but if the employee earned sick leave in addition to the 1,008 hours, he would report it to MOSERS and it would be credited to his retirement. As of the date of this appeal, this policy remains in effect.

The plaintiffs filed a declaratory judgment action in the Cole County Circuit Court. The petition alleged that the plaintiffs were denied retirement income because MWSC limited or capped the amount of sick leave the employees could earn prior to July 1, 1992. They asked that the court remove the cap from the prior years allowing them to be credited for the additional sick leave earned before the 1992–1993 academic year.

The trial court entered its judgment on November 9, 2000, barring the Appellants' claims under the applicable statute of limitations, § 516.120, finding that MWSC is entitled to fix the compensation of its employees under §§ 174.120 and 174.140, and that § 36.350 does not apply to academic institutions. This appeal followed.

The Appellants raise two points on appeal. First, they allege that the trial court erred in entering judgment for the Respondents based on the statute of limitations because claims for additional compensation accrue when the compensation is due and not paid, and the Appellants' claims were brought within five years of when the compensation was due to the Appellants. In the second point, they claim that the trial court erred in its interpretation of § 174.120, 174.140, and 36.350 in that MWSC's policy of capping the number of hours of accumulated sick leave that can be reported to MOSERS violates Missouri's public policy because § 36.350 applies to academic institutions during the relevant time periods and that statute entitled MWSC's employees to accumulated sick leave without limitations.

## II. Standard of Review

Although the trial court denied the Appellants' declaratory judgment and issued a judgment in favor of the Respondents, we review this case under the same standard as if the declaratory judgment was ordered.[4] This court reviews a declaratory judgment under the standard applicable to other court-tried cases.[5] We affirm the trial court's judgment regarding issues of fact unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.[6] We review questions of law de novo.[7]

## III. Legal Analysis

### A. Statute of Limitations

The Appellants contend that the trial court erred in granting a declaratory judgment in favor of the Respondents because the statute of limitations, § 516.120(2), had not expired at the commencement of this action. Section 516.120(2) bars claims created by statute, other than a penalty or forfeiture, if they are not brought within five years. The

4. Rule 87.08 states that "[a] declaratory judgment may be either affirmative or negative in form and effect; and shall have the force and effect of a final judgment or decree." Missouri Rules of Civil Procedure (2001).

5. *Carmack v. Missouri Dep't. of Agric.*, 31 S.W.3d 40, 46 (Mo.App. W.D.2000) (citing *Vocational Servs., Inc. v. Developmental Dis-*abilities Res. Bd.*, 5 S.W.3d 625, 629 (Mo.App. W.D.1999)).

6. *Id.* (citing *Murphy v.Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

7. *Id.*

Respondents assert that the Appellants' claims are barred under § 516.120(2) because the claim accrued when they were denied the sick leave in 1992, and the petition was not filed until 1999, after the statute of limitations expired. We disagree.

This court recently decided *Bettis v. Potosi R–III School District*,[8] and, based on the facts and analysis of a similar issue presented on appeal in that case, we reverse the trial court's judgment regarding the expiration of the statute of limitations. In *Bettis*, school district employees sought declaratory relief against their Retirement System because they claimed they were entitled to pension contributions from the school district prior to 1990 based on Chapter 169.[9] The school district began making contributions on the employees behalf after 1990 and was required to remit the employees contributions as well as its matching contributions to the Retirement System.[10]

The school district claimed that the employees were barred from bringing their claim because the statute of limitations, §§ 516.110 and 516.120, had expired.[11] The school district argued that the cause of action accrued in 1990, when the employees' damages were sustained and capable of ascertainment.[12] The claim, however, was not filed until 1999, four years

after the statute of limitations would seem to have expired.[13]

But this court held that pension benefits are sustained and capable of ascertainment when each periodic payment comes due.[14] We concluded that the statute of limitations "does not begin to run [against the retirement fund] until the claimant has retired or otherwise qualified, and has submitted a formal claim." [15]

Similar to *Bettis*, the Appellants in the case at hand are either active employees at MWSC or retired within five years prior to the filing of the petition for declaratory judgment. Thus, any action against MOSERS, which requires calculation of their retirement benefits and the method to which it accrues, does not begin to run until the employee is eligible to obtain that benefit.[16]

■ The Respondents, however, argue that the exception to the general rule applies in this case. An exception arises when there has been a "clear repudiation of the claim by the fiduciary communicated to the beneficiary." [17] The record does not indicate that there was a repudiation of the claim from either MWSC or MOSERS. Thus, this exception clearly does not apply here. Therefore, the Appellants' cause of action was timely filed as to MOSERS.[18]

**B. Accumulated Sick Leave**

**8.** 51 S.W.3d 183 (Mo.App. W.D.2001).

**9.** *Id.* at 183.

**10.** *Id.*

**11.** *Id.*

**12.** *Id.* at 185–86.

**13.** *Bettis,* 51 S.W.3d at 185–86.

**14.** *Id.* at 187–88.

**15.** *Id.* The opinion in *Bettis* did not specifically resolve the issue of whether the claim

against the *school district* was barred by the statute of limitations because the plaintiff abandoned any attempt to seek collections from the district. *Id.* at 187–89.

**16.** *Id.*

**17.** *Id.* at 189.

**18.** Because the second issue, outlined in subsection B, is dispositive of this appeal, we will not address the applicability of the statute of limitations as it pertains to MWSC.

■ The Appellants appeal the trial court's judgment denying their claims for compensation for accumulated sick leave prior to 1992. They argue that capping the amount of accumulated sick leave that could be reported to MOSERS for services rendered prior to the 1992–93 academic year violates Missouri public policy because the State Personnel Law, § 36.350, governs the Board of Regents of MWSC and provides for an unlimited accumulation of sick leave. The Appellants, further, argue that § 36.350 governs MWSC's sick leave policy despite the promulgation of §§ 174.120 and 174.140, which provide the college with the authority and discretion to fix compensation. Conversely, the Respondents argue that § 174.120 and 174.140 specifically give the college the power to fix compensation, thereby taking precedence over § 36.350. We agree.

■ When construing a statute, courts must "ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning."[19] When deciding whether a statute is clear and unambiguous so as to ascertain the intent of the legislature, the appellate court must consider whether the language is plain and clear to a person of ordinary intelligence.[20] Only when the language is ambiguous or if its plain meaning would lead to an illogical result will the court look past the plain and ordinary meaning of a statute.[21]

■ Statutes relating to the same subject matter are considered *in pari materia* and are to be construed together, "even though the statutes are found in different chapters and were enacted at different times."[22] "Where two statutes concerning the same subject matter, when read individually, are unambiguous, but conflict when read together, we will attempt to reconcile them and give effect to both."[23] If one statute addresses a subject matter generally while another statute addresses the same subject matter more specifically, the two statutes should be harmonized if possible.[24] But if the conflict between the statutes cannot be reconciled, the more specific statute must prevail over the general statute.[25]

Appellants argue that §§ 174.120 and 174.140 conflict with § 36.350. Sections 174.120 and 174.140 give state colleges and universities, through their boards of regents, the discretion to control and manage the college and fix compensation for their employees. Section 174.120 states in pertinent part, "[e]ach state teachers college shall be under the general control and management of its board of regents, and the board shall ... have the entire management of the college." Section 174.140 provides that:

> Each board of regents may appoint and remove the president or any professor or teacher in any state college in its district; may fix the duration, terms and conditions of their offices and compensation; may enter into agreements for and

**19.** *Farmers' & Laborers' Coop. Ins. Ass'n v. Dir. of Revenue,* 742 S.W.2d 141, 145 (Mo. banc 1987).

**20.** *Wheeler v. Bd. of Police Comm'rs of Kansas City,* 918 S.W.2d 800, 803 (Mo.App. W.D. 1996) (citing *Wolff Shoe Co. v. Dir. of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988)).

**21.** *Id.*

**22.** *State ex rel. Dir. of Revenue v. Gaertner,* 32 S.W.3d 564, 566 (Mo. banc 2000).

**23.** *Habjan v. Earnest,* 2 S.W.3d 875, 881 (Mo. App. W.D.1999).

**24.** *Gaertner,* 32 S.W.3d at 566.

**25.** *Id.*

make contributions to both voluntary and statutory retirement plans for the president, professors and teachers; and under rules adopted by the board may extend the provisions of the workers' compensation law to all employees thereof.

Sections 174.120 and 174.140 neither conflict when read individually nor together, but Appellants contend that these sections conflict with § 36.350. Section 36.350 under the State Personnel Law, which regulates sick and annual leave for all state agencies, provides that:

The regulations shall provide for the hours of work, holidays, attendance, and leaves of absence in the various classes of positions subject to this law. They shall contain provisions for annual leave, sick leave, and special leaves of absence, with or without pay, or with reduced pay, and may allow special extended leaves for employees disabled through injury or illness arising out of their employment, and the accumulation of annual leave and sick leave. Such regulations shall apply in all state agencies.

Appellants argue that the conflict arises from the terms "state agency" because the legislature did not define "state agencies" under Chapter 36 until 1996. A brief historical analysis will assist in reconciling the ambiguity Appellants' claim exists between § 174.120 and 174.140 and § 36.350. Chapter 174 governs state colleges and universities.[26] Sections 174.120 and 174.140 were enacted in 1909 giving the boards of regents the authority to manage the schools and to fix teachers' compensation, respectively.[27] Both sections were amended in 1919 to include the terms "state teachers college."[28] Both sections were again amended in 1929[29] and 1939,[30] but the revisions were not significant to this appeal. Then in 1945 the legislature enacted § 36.350 without the reference to state agencies that exist in the current version of the statute. Later, § 174.140 was revised in 1947 to include more specific language giving the board the power to "fix the duration, terms and conditions of their offices [the president, professors, and teachers] and compensation." And in 1969 the legislature made another revision to § 174.140, which does not effect this appeal.

The most significant changes came in 1979 when § 36.350 was amended to apply to all state agencies, but the legislature did not define state agencies. In 1980 the Office of the Attorney General issued an advisory opinion concluding that state colleges were state agencies for the purposes of applying § 36.350.[31] Following this advisory opinion the Missouri Supreme Court decided *Byrd v. Board of Curators of Lincoln University of Missouri.*[32] In *Byrd,* the court determined that the board was an agency for purposes of the Missouri Administrative Procedures Act (MAPA).[33] Although MAPA did not specifically include universities and state colleges within the definition of agency, the

---

**26.** Ch. 174, RSMo 1994.

**27.** § 11071 (R.S.1909); § 11074 (R.S.1909).

**28.** § 11498 (R.S.1919); § 11503 (R.S.1919).

**29.** § 9603 (R.S.1929); § 9608 (R.S.1929).

**30.** § 10760 (R.S.1939); § 10765 (R.S.1939).

**31.** "Attorney general opinions are not entitled to any more deference than that of any other competent attorney." *Laws v. Sec'y of State,* 895 S.W.2d 43, 48 n. 5 (Mo.App. W.D.1995) (citing *Gershman Inv. Corp. v. Danforth,* 517 S.W.2d 33, 36 (Mo. banc 1974)).

**32.** 863 S.W.2d 873 (Mo. banc 1993).

**33.** *Id.* at 875; *see* Chapter 536, RSMo 1994.

court concluded that the term "agency" applied to state universities and colleges.[34]

Following *Byrd*, this court held in *Laws v. Secretary of State*,[35] that the secretary of state's office was an agency for purposes of § 36.390(8). We determined that the definition of "agency" and "state agency" were not defined in Chapter 36 of the State Personnel Law.[36] The relevant section under Chapter 36 addressed in *Laws*, § 36.390, contained a provision that directed us to refer to Chapter 536.[37] Chapter 536 contained a definition of state agency and agency, which encompassed the Secretary of State's office.[38] Since § 36.390 contained a provision that directed us to refer to Chapter 536, we limited the extension of that analysis to § 36.390.

■ Immediately following *Laws*, in 1996, the legislature amended Chapter 36 by including a definition of agency. Section 36.020(1) defines "agency", "state agency" or "agency of the state" as a "department, board, commission or office of the state *except* for offices of the elected officials, the general assembly, the judiciary, and *academic institutions*."[39] "While an amendment to a statute must be deemed to have been intended to accomplish some purpose, that purpose can be clarification rather than a change in existing law."[40]

The legislature's amendment to the State Personnel Law resolves any conflict which may have existed between §§ 174.120 and 174.140 and § 36.350. The legislature made it crystal clear that it intended to exclude academic institutions from the State Personnel Law as represented through its express language contained in the definitional section of the State Personal Law.

The Appellants, however, argue that since the legislature did not expressly exclude academic institutions from Chapter 36 until 1996, we should look beyond the legislature's intent and find that from the period of 1979 through 1992, Chapter 36 applied to state colleges such as MWSC. Appellants have cited no authority to support their contention. In *Flipps Nine, Inc. v. Missouri Property and Casualty Insurance Guaranty Ass'n*, the appellant made the same argument, but the Eastern District found that an amendment to an existing statute explicitly excluding coverage of claims of certain nonresident members did not imply that the legislature intended to include these nonresident members prior to the amendment.[41] We, therefore, conclude that the amendment to § 36.020(1) was intended only to clarify an existing law and the legislature did not mean to include academic institutions within § 36.350 prior to the 1996 amendment.

After reviewing the statutes before the 1996 amendment to Chapter 36, we find no evidence that the General Assembly intended Chapter 36 to apply to MWSC. The legislature specifically enacted Chapter 174 to apply to state colleges and universities, and § 174.020 names MWSC as a state college under that chapter. Furthermore, when promulgating and amending Chapter 174, the General Assembly did not refer back to § 36.350 or any other section

**34.** *Byrd*, 863 S.W.2d at 875.

**35.** 895 S.W.2d 43 (Mo.App. W.D.1995).

**36.** *Id.* at 46.

**37.** *Id;*, § 36.390.9.

**38.** *Laws*, 895 S.W.2d at 47.

**39.** § 36.020(1) RSMo Cum.Supp.1996 (emphasis added).

**40.** *State v. McGirk*, 999 S.W.2d 298, 301 (Mo. App. W.D.1999).

**41.** 941 S.W.2d 564, 568 (Mo.App. E.D.1997).

or provision in the State Personnel Law with the standard phrase "unless otherwise provided by law." Moreover, the legislature's immediate reaction to the decisions in *Laws* and *Byrd* indicate its intent to exclude academic institutions from the ambit of Chapter 36. Therefore, academic institutions such as MWSC are excluded from Chapter 36. Point denied.

### IV. Conclusion

Based on the foregoing reasons, we vacate the portion of the trial court's judgment barring Appellants' claims based on the expiration of the statute of limitations. We, however, affirm on the remaining issues. It is not necessary to remand the cause to the trial court because based on our interpretation of the statutes in dispute, the Appellants' other claims are meritless.

JAMES M. SMART, JR., Judge, concurs and PAUL M. SPINDEN, Chief Judge, concurs in separate concurring opinion.

SPINDEN, Chief Judge, concurring.

I concur with the majority, but I write separately to clarify that, for me, the determining point in resolving this case is the provision of § 174.140, RSMo 2000, that the Missouri Western State College's board of regents shall have the power to "fix the ... compensation" and "enter into agreements for and make contributions to both voluntary and statutory retirement plans for ... teachers[.]" While § 36.350, RSMo 2000, makes provisions for state employees[1] and Missouri Western conceded at oral argument that it deems its teachers to be state employees, § 174.140 makes provisions for a specific group of state employees, teachers at state colleges and universities. Hence, under the doc-

trine recognized by the majority that a specific statute will prevail over a more general statute, § 174.140 governs in this case, and the respondents prevail.

---

1. The statute is worded to apply to employees of state agencies.