WEBSTER COUNTY ABSTRACT CO., INC., D.D. Hamilton Co., and Missouri Land Title Association, Plaintiffs/Appellants,

v.

Stacy ATKISON, Recorder of Deeds of Webster County, and Recorders Association of Missouri, Defendants/Respondents,

and

Webster County, Missouri, by and through its duly elected Commission solely in their capacity as such, Paul Ipock, Presiding Commissioner, Billie Cunningham, Northern Commissioner, and Denzil Young, Southern Commissioner, Intervenor–Defendant/Cross–Appellant.

Nos. SD 30191, SD 30197, SD 30199.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 10, 2010.

Motion for Rehearing and Transfer Denied Dec. 1, 2010.

Application for Transfer Denied Jan. 25, 2011.

John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, MO, and Stephen K. Dexter and John T. Coghlan, Lathrop & Gage, L.L.P., Kansas City, MO, for Appellants.

Chris Koster, Attorney General, and Cheryl Ann Schuetze, Assistant Attorney General, Jefferson City, MO, for Respondent Atkison.

Sherry A. Mariea, Mariea & Sigmund, L.L.C., Jefferson City, MO, for Respondent Recorders' Association of Missouri.

William H. McDonald, McDonald & Associates, L.L.C., and Paul F. Sherman, Mann, Walter, Bishop & Sherman, P.C., Springfield, MO, for Cross–Appellant Webster County, Missouri.

GARY W. LYNCH, Judge.

Two land title companies, Webster County Abstract Company, Inc. ("WCAC"), and D.D. Hamilton Company ("Hamilton"), sued the Recorder of Deeds of Webster County, claiming that the recorder violated the Sunshine Law, see section 610.010 et. seq., by charging fees for electronic copies of land records that exceeded the actual cost of reproducing those records.[1] The trial court entered summary judgment in favor of the recorder on all claims of liability. Finding that summary judgment was appropriate, we affirm.

### Factual and Procedural Background

This lengthy and somewhat procedurally complicated dispute began when WCAC and Hamilton filed a lawsuit on October 19, 2001, against the Recorder of Deeds of Webster County, who was at that time Nancy Jo Wester. WCAC and Hamilton sought a declaratory judgment that the fees charged by Wester for electronic copies of public land records were unlawfully excessive and further sought reimbursement of the sums charged in excess of the actual cost of reproducing the records. In addition, WCAC and Hamilton requested that the trial court enjoin Wester from enforcing her contractual restriction upon the further sale or dissemination of the copied land records to third parties.

In 2002, the Missouri Land Title Association ("MLTA"), a non-profit Missouri corporation composed of 175 member title companies located throughout Missouri, intervened in this case as a plaintiff. That same year, the Recorders Association of Missouri ("RAM"), an association of elected county recorders in the state, intervened as a defendant.

Webster County, Missouri ("Webster County"), filed a motion to intervene through its duly elected commissioners in November 2005, claiming it had a financial interest in the outcome of the litigation, but the trial court denied the motion. Webster County then filed a petition for writ of prohibition with this Court, seeking an order mandating its intervention, and

1. All statutory references are to RSMo 2000, unless otherwise indicated.

we held that Webster County was a necessary party and had the right to intervene. *State ex rel. Webster Co. v. Hutcherson,* 199 S.W.3d 866, 874–75 (Mo.App.2006).

On December 16, 2004, before Webster County intervened, the parties in this case entered into a Stipulation of Uncontroverted Facts.[2] This stipulation provided the uncontroverted facts upon which the trial court ultimately entered summary judgment against WCAC, Hamilton, and MLTA (collectively "Title Companies"). The following facts are drawn therefrom.

Both WCAC and Hamilton are in the business of land title abstracting and insuring land titles. For many years, WCAC and Hamilton relied upon public records regarding land transactions and related filings obtained from the recorder's office.

Although Wester was the duly elected Recorder of Deeds of Webster County at the outset of the litigation, she was replaced by Stacy Atkison in November 2002. Atkison was substituted as the real party in interest as the defendant in this case.

Before June 1, 2001, Wester charged members of the general public a fee of one dollar per page or image for copies of recorded documents but charged WCAC and Hamilton a reduced fee of 12½ cents per page. On or about April 26, 2001, Wester notified WCAC and Hamilton in writing of a proposed new fee agreement that would become effective on June 1, 2001. Pursuant to the agreement, the recorder of deeds would continue to provide, in electronic format, copies of recorded documents to the title companies for 12½ cents per page, with the condition that the title companies would be prohibited from

duplicating the information obtained from Wester for dissemination to others. In the event that either WCAC or Hamilton chose not to sign the new agreement, Wester would thereafter charge them one dollar per page like the rest of the general public. At all times after June 1, 2001, the fee of one dollar per page for copies of recorded documents, including electronic images, exceeds the recorder's actual cost of making copies, including staff time and the cost of any disk or tape.

Hamilton signed the June 1, 2001, agreement proposed by Wester, while WCAC did not. Since June 1, 2001, WCAC and Hamilton have obtained their public records from the recorder's office in electronic format by having them downloaded onto zip drives that they provided. From June 1, 2001, until March 21, 2003, the recorder charged Hamilton 12½ cents per page, while charging WCAC one dollar per page for copies of recorded documents in electronic format.

On March 20, 2003, Atkison notified WCAC and Hamilton that, beginning March 21, 2003, he would continue to provide a volume discount to persons or businesses purchasing over 2,000 copies of documents per month on a zip drive. However, the fee for such purchasers was increasing from 12½ cents per page to 60 cents per page. The new policy, which replaced the June 1, 2001, agreement, had no prohibition on the subsequent use or duplication of copied records.

Since the implementation of the March 21, 2003, policy, WCAC has continued to purchase computerized copies of recorded documents, paying 60 cents per page. Hamilton, however, has purchased no pub-

---

**2.** As this occurred before Webster County filed its Motion to Intervene, it is not a party to the stipulation. Because our decision moots Webster County's position in this litiga-

tion, we need not address the effect, if any, of the County's failure to join in this stipulation after it intervened herein.

lic records from Atkison since the start of the new policy and has instead purchased, or has otherwise been provided, its records in electronic format from WCAC.

WCAC and Hamilton assert they have been charged by Wester and then Atkison a per-page fee for electronic copies of recorded instruments in excess of the recorder's actual cost to produce such copies, which they assert is the maximum amount allowed for electronic copies of public records under section 610.026.1(2).[3] Atkison argues that section 59.310 allows a recorder to charge up to two dollars for the first page and one dollar per page thereafter for copies of recorded instruments. As such, Atkison denies that either title company was ever charged in excess of what that statute allows.

In 2005, the parties filed various motions for summary judgment, which essentially remained dormant pending resolution of Webster County's attempt to intervene. While the writ case involving Webster County was pending, however, WCAC and Hamilton filed a separate petition against Webster County seeking recovery of the allegedly excessive fees based on Webster County's claim that the monies paid to the recorder become county property. This separate action was consolidated with the underlying action on August 15, 2008, after Webster County was allowed to intervene as a party herein.

The parties again filed motions for summary judgment in 2009, except for RAM, which elected to continue to rely upon its motion filed in December 2005. Title Companies filed one Joint Motion for Partial Summary Judgment, while defendants Atkison, RAM, and Webster County each relied upon their separately filed Motions for Summary Judgment.

In their summary judgment motion, Title Companies sought a declaratory judgment that Atkison and his predecessor violated their statutory authority by charging WCAC and Hamilton in excess of the actual costs required for copying public records in electronic format and requested that Atkison and his successors be permanently enjoined from doing so in the future. In addition, Title Companies asked the trial court to decree that Atkison is not statutorily entitled to restrict the sale or dissemination of public information received from the recorder and sought a judgment ordering Atkison or Webster County to reimburse WCAC and Hamilton for the excessive charges previously paid by them. Atkison and RAM requested summary judgment on all claims of liability raised by Title Companies, and Webster County moved for summary judgment against Title Companies based on governmental or sovereign immunity.

On October 16, 2009, the trial court entered summary judgment in favor of defendants Atkison and RAM on all claims. In particular, the trial court concluded that section 610.026 of the Sunshine Law, which limits fees for electronic copies of public records to the actual cost of reproduction, does not apply to recorders of deeds because section 59.310 of the Missouri Recorders' Statute provides a separate and specific fee structure for such copies. Therefore, Atkison and Wester did not act contrary to their statutory authority in charging above cost to reproduce records electronically. The trial court also held that the term "page" in the Missouri Recorders Statute includes electronic images and that "duplicate copies," as used in section 59.310.6(8), RSMo Supp.

**3.** The parties stipulated that the copies of recorded documents requested both before and after June 1, 2001, are copies of "public records" as that term is defined by section 610.010(6).

2001, represent only the second and subsequent duplications of the original document. Next, the trial court concluded that the issue of whether the Webster County recorder attempted to "privatize" the Webster County recorder's office by prohibiting title companies from selling or disseminating land records is now moot because the recorder no longer has such a policy. Finally, the trial court denied Webster County's summary judgment motion because the motion did not comply with the requirements of Rule 74.04(c)(1)[4] but held that Webster County could not be held liable for damages in any event because summary judgment was being entered in favor of Atkison on all claims of liability.

WCAC and Hamilton's appeal (No. SD30191), MLTA's appeal (No. SD30199), and Webster County's appeal (No. SD30197) timely followed.

### WCAC and Hamilton's and MLTA's Appeals—Nos. SD30191 and SD30199

Title Companies raise three points on appeal.[5] We address their points in the order presented.

### Standard of Review

We review the trial court's granting of summary judgment *de novo*, and view the record in the light most favorable to the party against whom judgment was entered. *Seeck v. Geico Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *American Std. Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2009). Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *American Std. Ins. Co.*, 34 S.W.3d at 89. Furthermore, the issues presented to us relate to statutory construction and, as such, they are entirely matters of law, and no deference is given to the trial court's determinations. *Pendergraft v. Stewart*, 123 S.W.3d 920, 923 (Mo.App.2004).

### Fee Structure in Section 59.310 Controls

In their first point, Title Companies assert that the "trial court erroneously declared and applied the law in ruling that the Missouri Recorders' Statute, § 59.310 RSMo permits a Recorder of Deeds to charge a fee up to $2.00 for the first page and $1.00 for each page thereafter for public records provided in electronic format[.]" Title Companies present three sub-points in support of this contention.

█ In their first sub-point, Title Companies posit that section 59.310 sets only the *maximum* fee a recorder can charge but does not mandate any *particular* amount and that this provision must be read in harmony with section 610.026 of the Sunshine Law, which specifies that only *actual costs* can be charged for copies of public records maintained electronically. We disagree and find that section 59.310 allows a recorder to charge up to the maximum amount provided in that section for copies of recorded instruments regardless of the Sunshine Law's fee restrictions.

Section 59.310 states, in relevant part:

... Recorders of deeds *shall be allowed fees* for their services as follows:

. . . .

(2) For *copying or reproducing any recorded instrument*, except surveys and plats: a fee not to exceed two dollars for the first page and one dollar for each page thereafter[.]

---

4. Rule references are to Missouri Court Rules (2009).

5. WCAC, Hamilton, and MLTA filed a combined appellants' initial brief and appellants' reply brief.

Section 59.310.6(2), RSMo Supp.2001 (formerly section 59.310.3(2), RSMo 2000) (emphasis added).

Section 610.026 provides, in pertinent part, the following:

1. *Except as otherwise provided by law,* each public governmental body shall provide access to and, upon request, furnish copies of public records subject to the following:

(1) Fees for copying public records, except those records restricted under section 32.091, RSMo, shall not exceed ten cents per page for a paper copy not larger than nine by fourteen inches, . . .

(2) Fees for providing access to *public records maintained on computer facilities . . . shall include only* the cost of copies, staff time [, which shall not exceed the average hourly rate of pay for staff of the public governmental body] required for making copies and programming, if necessary, and the cost of the disk, tape, [or other medium] used for duplication. . . .

Section 610.026.1, RSMo Cum.Supp.2004 (language added in 2004 is enclosed in brackets) (emphasis added).

How much a recorder can lawfully charge for electronic copies of recorded instruments principally involves our interpretation of the above statutes and is an issue of first impression. Title Companies contend section 610.026.1(2) mandates that governmental entities can charge no more than "actual cost" for copies of electronic public records, while Atkison contends that the "plain and ordinary language of [section 610.026.1] specifically exempts its fee provisions where the General Assembly has otherwise provided by law a different fee structure."

 When construing a statute, our primary aim is to ascertain the intent of the legislature from the language used and

give effect to that intent, remembering that "every word of a statute is presumed meaningful." *Gott v. Director of Revenue,* 5 S.W.3d 155, 158 (Mo. banc 1999). "Where the language of a statute is clear and unambiguous, this Court will give effect to the language as written, and will not engage in statutory construction." *Dubinsky v. St. Louis Blues Hockey Club,* 229 S.W.3d 126, 130 (Mo.App.2007).

The plain and unambiguous prefatory phrase in section 610.026.1—"Except as otherwise provided by law"—must be given effect according to its plain meaning. This Court has construed "except as otherwise provided by law" to mean "except as otherwise provided by statute." *Oregon Co. R–IVSch. Dist. v. LeMon,* 739 S.W.2d 553, 557 (Mo.App.1987); *see also Yates v. Casteel,* 329 Mo. 1101, 49 S.W.2d 68, 69 (1932). Thus, the purpose of that phrase is to excuse the requirements of section 610.026.1 if another statutory provision calls for a different fee arrangement. In other words, the pricing scheme contained in section 610.026.1 does not govern if a different statute relating to fees for obtaining copies of public records provides otherwise.

Here, the legislature, in section 59.310.6(2), specifically provides a fee structure distinct from section 610.026.1 for obtaining copies from a county recorder of recorded instruments, which the parties have stipulated are public records. The statute unequivocally states that recorders "*shall be allowed for* their services" to charge up to two dollars for the first page of a copy of a recorded instrument and up to one dollar for each additional page. Section 59.310.6(2) (emphasis added). Obviously, this pricing scheme is different than section 610.026.1, which limits fees for obtaining computerized records to actual cost. Therefore, as it concerns the charges at issue in this case, the fee

structure in section 59.310.6(2) controls over the section 610.026.1 actual-cost limitation. Neither Atkison nor Wester ran afoul of their statutory authority with the fees they charged WCAC and Hamilton, since the amounts were well within the maximum limits provided for in section 59.310.6(2).

This determination is consistent with *Deaton v. Kidd*, 932 S.W.2d 804 (Mo.App. 1996). In *Deaton*, the Western District of this Court dealt with a conflict between section 610.026 and a specific statutory provision that permits the Revisor of Statutes to sell copies of Missouri Revised Statutes on tape at a price that allows for a profit. *Id.* at 807. The Court held that "these specific provisions trump the Sunshine Law's cost requirements." *Id.* Likewise, section 59.310.6(2) controls over section 610.026.1 in this case.

Title Companies argue that section 59.310.6(2) merely provides a price ceiling, and does not dictate what the price for documents *should* be. Since section 610.026.1 deals specifically with electronic records, Title Companies contend, it should control and therefore limit what the recorder can charge to actual cost. This reasoning fails because, as Atkison points out, it would render section 59.310.6(2) meaningless because a recorder's fee for electronic records would always be limited to the actual cost of reproducing them. A recorder of deeds would never be able to charge the per-page maximum amount because it is undisputed that the cost of reproducing one page of a recorded document, electronic or otherwise, will always be less than one dollar.

■ In their second sub-point, Title Companies argue that section 59.310.6(2) does not apply to records kept and reproduced in electronic format; therefore the actual-cost requirement of section 610.026.1 controls, and the fees Atkison and his predecessor charged for computerized records are excessive. Title Companies rely upon the definition of the term "page" as it is used in section 59.310.6(2) to support their argument. They contend that "page" refers only to something printed on paper and that, therefore, section 59.310.6(2) is not relevant to this case because this litigation concerns only records maintained electronically and then downloaded electronically onto a zip drive. Neither, as Title Companies point out, involves paper.

Title Companies admit that the word "page" as used in section 59.310.6(2) refers back to the term "recorded instrument" in that section. Their argument presupposes, without explanation or discussion, that the term "recorded instrument" means the record of an instrument maintained by the recorder, which in this case they point out is an electronic record, rather than a paper record with pages. That presupposition is faulty, however, because the term "recorded instrument" as used in section 59.310.6(2) refers to the original instrument after being recorded not the record of that instrument maintained by the recorder.

The term "recorded instrument" has never been statutorily defined. Beginning on January 1, 2002, the effective date of section 59.005, however, the legislature defined "[d]ocument or instrument" as "any writing or drawing presented to the recorder of deeds for recording [,]" section 59.005(1), RSMo Supp.2001, and further defined "recorded" as "the recording of a document into the official public record, regardless of the process used [.]" Section 59.005(7), RSMo Supp.2001. Applying these definitions, the legislature's use of the term "recorded instrument" means any writing or drawing presented to the recorder of deeds that has been recorded into the official public record, regardless of

the process used by the recorder for that purpose. Thus, the relevant inquiry under section 59.310.6(2) is not whether the records maintained by the recorder have pages, but rather, whether the instrument presented for recording that was subjected to the recording process by the recorder after such presentment consisted of one or more pages.

As of June 1, 2001, the beginning date of this controversy, section 59.310 defined "page" to mean "any writing, printing or drawing covering all or part of one side of a paper, other than a plat, not larger than 8 1/2 inches × 14 inches." Section 59.310.1. Effective January 1, 2002, the definition was amended and moved to section 59.005(6). The definition was altered to remove the word "paper," and "page" is now defined as: "any writing, printing or drawing printed on one side only covering all or part of the page, not larger than eight and one-half inches in width and eleven inches in height for pages other than a plat or survey [.]" Section 59.005(6), RSMo Supp.2001. Nothing in the record before us suggests that any of the original instruments presented for recording and subjected to the recording process in Webster County during the relevant period did not consist of one or more pages as the term "page" has been statutorily defined under either statute in effect during that period. To the contrary, the only evidence in the record on this issue supports that each page in each such recorded instrument was assigned a unique page number by the recorder during the recording process, even though that process resulted in the recorder maintaining an electronic record of that instrument.

Even in the absence of the statutory definitions for "recorded" and "instrument," it is clear that the legislature intended to refer to the number of pages in the original instrument subjected to the recording process rather than the number of pages, if any, in the record of that instrument maintained by the recorder. The former leads to uniformity in charges that are dictated by the composition of the original instrument, whereas the latter leads to non-uniform fees from county to county based upon a particular method of maintaining records dictated by each individual county recorder. While Wester and Atkison chose to maintain electronic records that arguably had no pages, an enterprising recorder could devise a paper record system that required four "pages" to maintain the record of a one page instrument presented for recording and, thus, quadruple his or her fees for copies provided of that instrument thereafter. The legislature would not have intended such an unreasonable and absurd result and we should avoid any construction of section 59.310 that would support such a result. *See Murray v. Mo. Highway & Transp. Comm'n*, 37 S.W.3d 228, 233 (Mo. banc 2001).

■ Finally, in their third sub-point, Title Companies argue that the trial court's determination that the phrase "duplicate copies" in section 59.310.6(8), RSMo Supp. 2001, does not apply to the *first* electronic copy of a record misconstrues the plain meaning of the provision and leads to an unreasonable and absurd result. This is because, Title Companies contend, no individual or title company would ever need to request multiple electronic copies of the same record on one zip drive.

Section 59.310.6(8), which took effect January 1, 2002, states, "For duplicate copies of the records in a medium other than paper, the recorder of deeds shall set a reasonable fee not to exceed the costs associated with document search and duplication [.]" Section 59.310.6(8), RSMo Supp.2001. Thus, for "duplicate copies" of

electronic records, the recorder cannot charge a fee greater than actual cost.

■ Title Companies urge us to find that "duplicate" and "copy" are synonymous and that the legislature sandwiched the two terms together simply to make extra clear that the provision applies to *any* electronic reproduction of a recorded document. This construction is problematic because it ignores the plain meaning of the phrase "duplicate copies" and does not give effect to each word, essentially rendering the use of one or the other word redundant. Under the rules of construction, "we presume that the legislature did not insert superfluous language or idle verbiage in a statute." *Dubinsky*, 229 S.W.3d at 130. Therefore, we presume that the legislature used "duplicate" and "copies" together in order to create a particular meaning that could not have been implemented by just using "duplicates" or "copies" autonomously. We find the legislature used the phrase "duplicate copies" to mean *second* or *subsequent* copies of a recorded instrument, which is obviously distinct from the *first* copy of a recorded instrument. The actual-cost restriction set forth in section 59.310.6(8) applies only when one requests *multiple* copies of a recorded instrument, and even then only to the second and subsequent copies.

■ This common-sense interpretation of the provision is confirmed by the legislature's 2005 amendment to section 59.005, which added the following definition of "Duplicate": "copies requested concurrently with, but in excess of one reproduction in any medium of a recorded instrument or document or collection thereof." Section 59.005(3), RSMo Cum.Supp.2005. Title Companies argue that the purpose of this amendment was to change the law with respect to the meaning of "duplicate" and that such change indicates that the term must have had a different meaning before August 28, 2005, the amendment's effective date. This reasoning, however, ignores the fact that a statutory amendment, especially one that simply involves adding a definition to a statute, can be used to clarify and not to change. " 'While an amendment to a statute must be deemed to have been intended to accomplish some purpose, that purpose can be clarification rather than a change in existing law.' " *Andresen v. Bd. of Regents of Mo. W. State College*, 58 S.W.3d 581, 589 (Mo.App.2001) (quoting *State v. McGirk*, 999 S.W.2d 298, 301 (Mo.App.1999)). In *Andresen*, the Court held that the legislature's addition of a definition for "agency" to the State Personnel Law had the effect of clarifying, not changing the existing law. *Andresen*, 58 S.W.3d at 589. Likewise, the 2005 amendment to section 59.005 should be viewed as a mere clarification of the meaning of the word "duplicate" and not as an indication that the word had a different meaning beforehand.

■ Finally, Title Companies argue that this construction of section 59.310.6(8) is essentially unreasonable and pointless, since one would never need to obtain from the recorder multiple electronic copies of the same record, i.e., once a single electronic record is downloaded to a zip drive, it can easily be duplicated and accessed forever. Viewed from Title Companies' narrow perspective as to how they intend to acquire, use, and profit from their one electronic copy of recorded instruments, perhaps this argument makes some sense. Perhaps, without so deciding, the legislature had no rational policy justification for differentiating between the fee allowed for the first copy of a recorded instrument, regardless of the type of copy medium requested, and the fee allowed for duplicate copies of that same instrument in a medium other than paper, when all one needs is a single electronic copy. Our

responsibility, nevertheless, is to give effect to the plain and ordinary meaning of the statute as it is drafted, which we have done. Reviewing courts are "without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language." *Welch v. Eastwind Care Ctr.*, 890 S.W.2d 395, 397 (Mo. App.1995). If, as Title Companies argue, the statute as written makes no practical sense as applied to their situation and their needs, it is the job of the General Assembly, not this Court, to make appropriate changes.

For all of the foregoing reasons, we conclude that Atkison and Wester have not charged WCAC and Hamilton unlawfully excessive fees. Section 59.310.6(2) allows the recorder of deeds to charge up to two dollars for the first page of the first copy of a recorded instrument, regardless of the requested copy medium, and up to one dollar per page thereafter. Title Companies' first point is denied.

### No Unlawful Attempt to Privatize Recorder's Office

Title Companies' second point asserts that the trial court erred in ruling that the recorder's pricing policy "did not attempt to privatize the Webster County Recorder of Deeds by turning it into a profit center." Title Companies' point is premised solely upon their preceding argument that section 610.026.1 superimposes an actual-cost-to-copy limitation on the fees allowed to be charged by a recorder under section 59.310.6(2). Based upon this premise, Title Companies then reason that any charge for electronic copies in excess of the actual cost of making those copies allows a recorder to make a "profit" not authorized by law. Of course, our rejection of Title Companies' premise in their first point means that any such "profit" is expressly allowed by section 59.310.6(2), as long as

the recorder does not charge in excess of the maximum fees authorized in that section.

Furthermore, in the *Deaton* decision, the Western District held that the state's Committee on Legislative Research did not violate the Sunshine Law by turning a profit on the sale of Missouri statute books in accordance with section 3.140. *Deaton*, 932 S.W.2d at 807. Title Companies attempt to distinguish *Deaton* by arguing that the statutory scheme discussed in *Deaton* contains more specific directives on how to calculate fees than the guidelines contained in section 59.310. This argument is groundless and arbitrary. Section 59.310 specifically sets forth the maximum amount of fees the recorder can charge based on the different services the recorder's office provides. Moreover, Title Companies cite us to no legal authority requiring any threshold level of specificity a statute must meet in order to allow collection of fees in excess of the actual cost of services.

█ Finally, in their argument under this point, Title Companies beckon us to rule on the issue of whether a recorder of deeds can legally implement a policy restricting the sale or further dissemination of copies of public records, as attempted by Wester in the agreement in effect from June 1, 2001, to March 21, 2003. According to the uncontroverted facts, however, since that latter date, Atkison no longer prohibits title companies from selling or disseminating land records to third parties.

█ " 'The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction.' " *Armstrong v. Elmore*, 990 S.W.2d 62, 64 (Mo.App.1999) (quoting *State ex rel. Wilson v. Murray*, 955 S.W.2d 811, 812–13 (Mo.App.1997)). " 'When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the

court impossible, the case is moot and generally should be dismissed.'" *Id.* (quoting *State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo. App.1998)). Therefore, the more than seven-year hiatus in any controversy between the parties on this issue, coupled with the absence of any support in the record of any indication that the restriction will be reinstituted or enforced in the near future, renders this issue moot. Title Companies' second point is denied.

## No Unauthorized Tax

■ In their third point, Title Companies contend that the recorder's copy fees constitute "an unlawful and unauthorized tax" because they are greater than actual costs.[6]

■ The Missouri Constitution grants the power to tax to the General Assembly. Mo Const. art. X, § 1. Further, a " 'statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision.'" *Doe I v. Phillips,* 194 S.W.3d 833, 841 (Mo. banc 2006) (quoting *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. banc 1993)). The fees charged by Wester and Atkison have been and are authorized by the General Assembly in section 59.310.6(2). Regardless of whether these fees constitute a "tax," Title Companies have pointed to no constitutional provision to support their claim that the legislature was not authorized to enact these fee provisions. Title Companies' third point is denied.

## Webster County's Appeal—No. SD30197

■ Webster County appeals the trial court's denial of its motion for summary judgment, claiming that Webster County and its Office of Recorder of Deeds have complete sovereign immunity from Title Companies' suit for damages. We deny this point on appeal because "the court's denial of ... a motion for summary judgment is not a final judgment and is not reviewable on appeal." *Iowa Steel & Wire Co. v. Sheffield Steel Corp.,* 227 S.W.3d 549, 557 (Mo.App.2007).[7]

## Decision in all Appeals

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.

---

6. This issue was not ruled on by the trial court because it was, for all practical purposes, never presented to it. It was only raised in a footnote in Plaintiffs' Joint Memorandum in Support of their Objection to Defendant Stacy Atkison's Motion for Summary Judgment. The footnote contained a single sentence with citations and no further argument or analysis.

7. A limited exception to this rule has been recognized when the merits of the denied motion for summary judgment "are completely intertwined with a grant of summary judgment in favor of an opposing party." *Dhyne v. State Farm Fire & Cas. Co.,* 188 S.W.3d 454, 456 n. 1 (Mo. banc 2006). Webster County does not in any manner contend or argue that the denial of its motion for summary judgment falls within this exception.