

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| CITY OF CREVE COEUR, MISSOURI, | ) | No. ED113308 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | Cause No. 18SL-CC02821-01 |
| | ) | |
| DIRECTV, LLC, ET AL., | ) | Honorable Ellen H. Ribaudo |
| | ) | |
| Respondents. | ) | FILED: October 14, 2025 |

## Introduction

City of Creve Coeur (Creve Coeur) appeals from the circuit court's grant of summary judgment in favor of DirecTV, LLC, Dish Network Corp., Dish Network, L.L.C., and Sling TV, L.L.C. (collectively, Respondents). Creve Coeur raises three points on appeal. In its first two points, Creve Coeur argues the circuit court erred in granting summary judgment to Respondents on its Video Service Provider Act (VSPA) claim because (1) the 2024 amendment to VSPA is not a retrospective clarification and (2) the ruling extinguished Respondents' indebtedness to Creve Coeur for VSP fees in violation of Article III, section 39(5) of the Missouri Constitution. In its third point, Creve Coeur alleges the circuit court erred in granting summary judgment to Respondents on its unjust enrichment claim because Creve Coeur presented sufficient evidence to support its claim and because Respondents did not properly move for summary judgment. We affirm.

As a preliminary matter, Netflix, Inc. and Hulu, LLC moved for leave to file brief of amici curiae in support of Respondents. Local Rule 375 permits briefing by amicus curiae with leave of court, and requires applicants to "concisely state the nature of the applicant's interest, set forth facts or questions of law that have not been, or reasons for believing that they will not adequately be, presented by the parties, and their relevancy to the disposition of the case." Netflix and Hulu's motion fails to set forth facts or questions of law that have not been adequately presented by the parties. Accordingly, we deny the motion.

Factual and Procedural Background

Enacted in 2007, VSPA replaced the traditional franchise process, whereby cable companies obtained franchises by negotiating with individual municipalities, with a new system that required video service providers to obtain single statewide authorization from the Missouri Public Service Commission to access public rights of way in order to build networks to deliver video programming. *See* sections 67.2675-.2714.[1] In exchange, video service providers pay the municipality a video service provider fee (VSP fee).

The original definition of "video service" read:

> [T]he provision of video programming provided through wireline facilities located at least in part in the public right-of-way without regard to delivery technology, including Internet protocol technology whether provided as part of a tier, on demand, or a per-channel basis. This definition includes cable service as defined by 47 U.S.C. Section 522(6), but does not include any video programming provided by a commercial mobile service provider defined in 47 U.S.C. Section 332(d), or any video programming provided solely as part of and via a service that enables users to access content, information, electronic mail, or other services offered over the public Internet.

Section 67.2677(14) (Cum. Supp. 2007).

---

[1] All section references are to RSMo (2016), unless otherwise indicated.

2

In July of 2018, more than ten years after VSPA's enactment, Creve Coeur, on behalf of itself and other similarly situated municipalities, filed its petition against Respondents, alleging that VSPA applied to Respondents and that they had not been paying VSP fees. Count I asked the circuit court to declare that Respondents provide "video service" within the meaning of VSPA and that Respondents failed to comply with VSPA and owe VSP fees, order an accounting of all monies owed by Respondents to class members and lastly enjoin them from engaging in business in the boundaries of class members without paying VSP fees. Count II sought a declaration that Respondents were unjustly enriched due to their failure to pay VSP fees and an order for accounting and injunction. Count III sought follow-on relief from Counts I or II for back fees, interest, and penalties Respondents owed each class member.

Respondents initially moved to dismiss the claims based in part on the "public internet" exception to the definition of "video service." The circuit court found that Creve Coeur alleged sufficient facts to support its allegations that Respondents do not provide their streaming over the public internet because it is done in part through direct ISP[2]-to-subscriber connections, bypassing the public internet. The court also noted the "solely as part of and via a service" statutory language and found that Respondents' video programming was not "part of" a broader service, but rather it was the entirety of their service. The circuit court concluded that Creve Coeur had "alleged facts sufficient to support its allegations that [Respondents] are Video Service Providers under the VSPA" and denied the motions on December 30, 2020.

On March 15, 2024, all parties moved for summary judgment. However, prior to the circuit court ruling on the motions, VSPA's definition of "video service" was amended to read:

[T]he provision, **by a video service provider**, of video programming provided through wireline facilities located at least in part in the public right-of-way without regard to delivery technology, including internet protocol technology whether

---

[2] ISP is an abbreviation for internet service provider.

3

provided as part of a tier, on demand, or **on** a per-channel basis. This definition includes cable service as defined by 47 U.S.C. Section 522(6), but does not include any video programming provided by a commercial mobile service provider defined in 47 U.S.C. Section 332(d), or any video programming ~~provided solely as part of and~~ **accessed** via a service that enables users to access content, information, electronic mail, or other services offered over the ~~public~~ internet, **including streaming content**.

Section 67.2677(14) (Cum. Supp. 2024) (effective August 28, 2024) (original language stricken; new language bolded). On July 25, 2024, the circuit court stayed discovery pending the resolution of briefing on the impact of the VSPA amendment.

On December 30, 2024, the circuit court granted summary judgment to Respondents, finding that the amendment "did not effectuate a substantive change of law, but rather clarified the VSPA's original meaning by resolving any ambiguities in the VSPA's 'video service' definition," and that the amendment foreclosed all of the class's claims. This appeal follows.

### Standard of Review

We review the grant of summary judgment *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.* (internal quotation omitted). We view the record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Id.* at 116 (internal quotation omitted). We review questions of law *de novo*. *Orthopedic Ambulatory Surgery Ctr. of Chesterfield, LLC v. Sharpe Holdings, Inc.*, 675 S.W.3d 574, 578-79 (Mo. App. E.D. 2023).

### Discussion

Creve Coeur raises three points on appeal. In Point I, it argues the circuit court erred in granting summary judgment to Respondents on its VSPA claims because the 2024 amendment

4

materially and prospectively changed the original statute. Creve Coeur alleges in Point II the circuit court erred in granting summary judgment to Respondents on its VSPA claims because the ruling violated the Missouri Constitution's prohibition against extinguishing indebtedness to municipalities. Lastly, in Point III, Creve Coeur claims the circuit court erred in granting summary judgment to Respondents on its claim of unjust enrichment because it presented sufficient evidence in support of its claim, and because Respondents did not properly move for or support summary judgment in their favor.

*Point I – Clarification or Substantive Change*

While it is ordinarily presumed that the legislature intended to effect some change to the existing law when it amends a statute, "[t]he purpose of a particular change may be to clarify" rather than substantively change it. *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. banc 2019). One such instance of clarification is when the legislature amends a statute in response to the judiciary's interpretation of that statute. *See Andresen v. Bd. of Regents of Missouri W. State Coll.*, 58 S.W.3d 581, 589 (Mo. App. W.D. 2001). Because clarifications are not substantive changes, they do not raise retrospectivity concerns. *See Osage Outdoor Advert., Inc. v. State Highway Comm'n of Missouri*, 699 S.W.2d 791, 793-94 (Mo. App. W.D. 1985) (addressing in dicta appellant's argument that amendment was unconstitutionally retrospective, explaining that retrospective application of the amendment was unnecessary because it was a clarification of existing law).

In *Andresen*, the plaintiffs, active and retired faculty members of Missouri Western State College (MWSC), filed a declaratory judgment action alleging they "were denied retirement income because MWSC limited or capped the amount of sick leave the employees could earn prior to July 1, 1992." 58 S.W.3d at 585. There, the plaintiffs asked the court to remove the cap from

5

the prior years, which would allow them credit for additional sick leave earned prior to the 1992-93 academic year.  *Id.*  The court barred their relief due to the statute of limitations and further held that section 36.350, which governs sick and annual leave for state agencies, did not apply to academic institutions.  *Id.*

On appeal, the plaintiffs argued that conflict existed between sections 174.120 and 174.140, which jointly gave state colleges and universities the discretion to control and manage the college and fix employee compensation, and section 36.350, and urged the court to apply section 36.350 to state universities because the legislature did not expressly exclude academic institutions from Chapter 36 prior to 1996.  *Id.* at 588-89.  The plaintiffs claimed the conflict arose from the terms "state agency" because they were not defined under chapter 36 until 1996.  *Id.* at 588.  The court provided a historical overview of the relevant statutes and noted that although section 36.350 was amended in 1979 to apply to all state agencies, the legislature provided no definition of "state agency."  *Id.*  Following an Attorney General's Office advisory opinion concluding that state colleges were state agencies under section 36.350, a Supreme Court of Missouri holding applying the term "agency," as used in the Missouri Administrative Procedures Act, to state universities and colleges, and a Western District opinion, the legislature responded in 1996 by amending Chapter 36 to define "agency," "state agency," or "agency of the state," as a "department, board, commission or office of the state *except* for offices of the elected officials, the general assembly, the judiciary, and *academic institutions*."  *Id.* at 588-89 (emphasis in original) (internal citations omitted).

The *Andresen* court concluded that the 1996 amendment to Chapter 36 resolved any conflict that may have existed between sections 174.120, 174.140, and 36.350, holding that "[t]he legislature made it crystal clear that it intended to exclude academic institutions from [Chapter 36]

as represented through its express language contained in the definitional section[.]" *Id.* at 589. The court rejected the plaintiffs' argument that Chapter 36 applied to them from 1979 through 1992, concluding that the amendment adding a definition "was intended only to clarify an existing law and the legislature did not mean to include academic institutions" prior to the amendment. *Id.*; *see also Mann v. McSwain*, 526 S.W.3d 287, 292 (Mo. App. W.D. 2017) (noting "a statutory amendment, especially one that simply involves adding a definition to a statute, can be used to clarify and not to change" (internal quotation omitted)).

This case is strikingly similar to *Andresen*. Here, Creve Coeur seeks VSP fees it argues accrued prior to the August 2024 amendment because the definition did not previously specifically exclude streaming services. Creve Coeur's position is undermined by the plain language of the amendment, which effected minor changes that did not substantively alter the description of excluded content. *See Andresen*, 58 S.W.3d at 589. The legislature's intent to clarify section 67.2677 is evidenced by the narrowly tailored changes to the statute. *See Osage Outdoor Advert.*, 699 S.W.2d at 793 (holding amendment to definitional statute to specifically exclude "railroad tracks and minor sidings" from its definition of "commercial or industrial activities" to be a clarification).

We conclude the amendment to the definition of "video service" was intended only to clarify VSPA and that the legislature did not intend to include streaming content prior to the August 2024 amendment. This is clear from the language of the statute and is consistent with the Western District's holding in *Andresen*. Accordingly, the circuit court did not err in granting summary judgment to Respondents as they were entitled to judgment as a matter of law. Point denied.

*Point II – Indebtedness to Municipalities*

The Missouri Constitution provides that "[t]he general assembly shall not have power: . . . [t]o release or extinguish or to authorize the releasing or extinguishing, in whole or in part, without consideration, the indebtedness, liability or obligation of any corporation or individual due this state or any county or municipal corporation." Mo. Const. art. III, section 39(5). Creve Coeur must show (1) that Respondents "owed an indebtedness, liability, or obligation" to it prior to the amendment, and (2) that the amendment "extinguished that indebtedness, liability, or obligation without consideration." *See St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 712 (Mo. banc 2011). "[I]t is essential to determine whether the statutes as they existed prior to the enactment" of the amendment imposed an obligation on Respondents. *Id.* at 713.

Creve Coeur's argument fails at the first element. As set forth above, VSPA never applied to streaming content. Neither the amendment nor the circuit court's judgment extinguished an indebtedness because there was no indebtedness to extinguish. Point denied.

*Point III – Unjust Enrichment*

Appellate courts "will affirm the grant of summary judgment on any legal theory supported by the record, whether or not it was the basis relied upon by the trial court." *Ross v. Scott*, 593 S.W.3d 627, 630 (Mo. App. E.D. 2019) (internal quotation omitted). Courts will not give equitable relief "when doing so would clearly contravene the intent and language of the legislature." *Est. of Mickels*, 542 S.W.3d 311, 314 (Mo. banc 2018).

Creve Coeur argues that by using its public right-of-way without compensation, Respondents have been unjustly enriched. Such relief would contravene the legislature's intent. *See id.* The legislature, through VSPA, decided who must compensate municipalities for the use

of their public rights-of-way.  Respondents, insofar as they provide streaming content, are not video service providers and are not obligated to pay VSP fees.  Point denied.

## Conclusion

For the reasons set forth above, we affirm the judgment of the circuit court.

_Virginia Lay_
Virginia W. Lay, J.

John P. Torbitzky, C.J., concurs.
Michael S. Wright, J., concurs.