

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| PHILLIP WEEKS, | ) | *Opinion issued September 3, 2024* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC100427 |
| | ) | |
| ST. LOUIS COUNTY, MO., | ) | |
| CITY OF UNIVERSITY CITY, MO., | ) | |
| CITY OF WEBSTER GROVES, MO., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| AND REGIONAL JUSTICE | ) | |
| INFORMATION SERVICES | ) | |
| COMMISSION (REJIS), | ) | |
| | ) | |
| Defendant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
### The Honorable Thomas C. Albus, Judge

Phillip Weeks appeals the circuit court's judgment in favor of the city of Webster

Groves and St. Louis County on their motions for summary judgment in the underlying

lawsuit Weeks filed asserting violations of Missouri's Sunshine Law, section 610.010, et

seq.[1]  Because the record before this Court demonstrates no party has established the

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.  All references to section 610.021 are to RSMo Supp. 2018.  All rule references are to Missouri Court Rules (2022).

right to judgment as a matter of law at this stage of the litigation, this Court vacates the circuit court's grant of summary judgment for both Webster Groves and St. Louis County and remands the case for further proceedings consistent with this opinion.

## Factual Background and Procedural History

Weeks sued Webster Groves and St. Louis County alleging each defendant violated the Sunshine Law by failing to produce all public records he requested.[2]

In November 2018, Weeks made the following request to Webster Groves: "I am hereby requesting the annual 'raw' data files from the Vehicle Stop Forms with all columns including the DSN/PIN, that REJIS uses to compile the stats for the annual Vehicle Stop Reports for the Webster Groves Police Department for the following years and months[.]" Weeks requested the files for the years 2013 through 2017 and the monthly data for 2018.

In July 2019, Weeks made the following request to St. Louis County:

[P]lease produce electronic copies of the following:

(1) Files of the databases containing data generated from vehicle stop forms for 2014 through and including 2018, including officer PINs/DSNs, that are kept pursuant to Mo. Rev. Stat. § 590.650. Upon information and belief, these databases are generated from information transmitted to REJIS by St. Louis County Police Officers during or after each vehicle stop.

---

[2] Weeks also sued the Regional Justice Information Services Commission ("REJIS") and University City. He had made a similar request for public records from University City. But Weeks voluntarily dismissed his claim against University City after it produced the requested records. The circuit court granted summary judgment in favor of REJIS, but Weeks dismissed REJIS from this appeal.

Weeks purported to clarify his request in the body of his letter, stating: "To clarify: this open records request is for files containing the databases (in worksheet, ie excel workbook formatting) created from the raw data transmitted upon completion of the vehicle stop forms."

The record reflects REJIS provides data storage and information technology support services to Webster Groves and St. Louis County, among others, under management control agreements with each political subdivision and their respective police departments. Relevant here, REJIS provides Webster Groves and St. Louis County with access to LEWeb—REJIS' portal for data services—and the Traffic Analysis system. The record further reflects the parties refer to the "DSN" or "PIN" (the "DSN") referenced in the requests as "Department Serial Number" or "Department Service Number." The parties agree the DSN is unique to each officer, and, if an officer changes departments, he or she is assigned a new DSN.

Further relevant here, under section 590.650, each time a peace officer stops a driver of a motor vehicle, the officer must report certain information to the law enforcement agency employing the officer.[3] Law enforcement agencies must compile the

---

[3] Specifically, section 590.650.2(1)-(10) requires the following information be reported:

(1) The age, gender and race or minority group of the individual stopped;
(2) The reasons for the stop;
(3) Whether a search was conducted as a result of the stop;
(4) If a search was conducted, whether the individual consented to the search, the probable cause for the search, whether the person was searched, whether the person's property was searched, and the duration of the search;

3

information into an annual report to the attorney general, who must analyze the reports.

Sec. 590.650.3-4.  The statute requires each law enforcement agency to adopt a policy on race-based traffic stops.[4]  Sec. 590.650.5.

---

(5)  Whether any contraband was discovered in the course of the search and the type of any contraband discovered;
(6)  Whether any warning or citation was issued as a result of the stop;
(7)  If a warning or citation was issued, the violation charged or warning provided;
(8)  Whether an arrest was made as a result of either the stop or the search;
(9)  If an arrest was made, the crime charged; and
(10)  The location of the stop.

[4] Section 590.650.5 provides:

Each law enforcement agency shall adopt a policy on race-based traffic stops that:
(1)  Prohibits the practice of routinely stopping members of minority groups for violations of vehicle laws as a pretext for investigating other violations of criminal law;
(2)  Provides for periodic reviews by the law enforcement agency of the annual report of the attorney general required by subsection 4 of this section that:
(a)  Determine whether any peace officers of the law enforcement agency have a pattern of stopping members of minority groups for violations of vehicle laws in a number disproportionate to the population of minority groups residing or traveling within the jurisdiction of the law enforcement agency; and
(b)  If the review reveals a pattern, require an investigation to determine whether any peace officers of the law enforcement agency routinely stop members of minority groups for violations of vehicle laws as a pretext for investigating other violations of criminal law; and
(3)  Provides for appropriate counseling and training of any peace officer found to have engaged in race-based traffic stops within ninety days of the review.

4

As to the request to Webster Groves, the chief of operations for REJIS responded, explaining REJIS would need to "aggregate the information & recreate the reports from 2016, 2017 & partial 2018."[5] The chief of operations informed Weeks the cost to fulfill his request would be $352. But Webster Groves directed REJIS not to produce the reports and informed Weeks the Sunshine Law did not require a new record to be created.

As to the St. Louis County request, St. Louis County first authorized REJIS to provide records to Weeks, including the DSN. After Weeks sued, however, St. Louis County moved for a protective order, arguing it had inadvertently disclosed the DSN. The circuit court issued a protective order, and St. Louis County redacted the DSN.

Weeks, Webster Groves, and St. Louis County filed competing motions for summary judgment. Weeks argued he had requested public records under the Sunshine Law and the DSN is not excluded or exempt from disclosure. Webster Groves argued the DSN is not responsive to Weeks' request and no "public record" was requested because Webster Groves would have to create a new record to comply with his request. St. Louis County also argued the DSN is not responsive to Weeks' request and further asserted the DSN is exempt from disclosure under subdivisions (3) and (13) of section 610.021. The

---

[5] REJIS' chief of operations informed Weeks that REJIS did not have any reports or data from the years 2013, 2014, and 2015. REJIS would send monthly electronic reports to Webster Groves of that month's electronic data submitted for monitoring purposes; however, prior to 2020, Webster Groves did not retain the monthly electronic report and would discard the report after a Webster Groves field officer reviewed the data.

5

circuit court granted summary judgment for Webster Groves and St. Louis County. Weeks now appeals.[6]

## Standard of Review

"This Court reviews a circuit court's grant of summary judgment *de novo*." *Sachtleben v. Alliant Nat'l Title Ins. Co.*, 687 S.W.3d 624, 629 (Mo. banc 2024). "In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper." *Id.* (internal quotation omitted). "Summary judgment is proper if the moving party establishes there is no genuine issue as to the material facts and the movant is entitled to judgment as a matter of law." *Id.* "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Id.* (internal quotation omitted).

## Analysis

Missouri's Sunshine Law provides: "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." Sec. 610.011.1. The Sunshine Law "states its open records provisions 'shall be liberally construed' and 'exceptions strictly construed.'" *Roland v. St. Louis City Bd. of Election Comm'rs*, 590 S.W.3d 315, 319 (Mo. banc 2019) (quoting sec. 610.011.1). Section 610.010(6) defines "public record" as:

---

[6] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

> **[A]ny record, whether written or electronically stored**, retained by or of any public governmental body including any report, survey, memorandum, or other document or study prepared for the public governmental body by a consultant or other professional service paid for in whole or in part by public funds, including records created or maintained by private contractors under an agreement with a public governmental body or on behalf of a public governmental body …. Any document or study prepared for a public governmental body by a consultant or other professional service as described in this subdivision shall be retained by the public governmental body in the same manner as any other public record[.]

(Emphasis added).

Under the plain language of section 610.010(6), a request is for a "public record" subject to the Sunshine Law only if the request is for (1) a record; (2) written or electronically stored; and (3) retained by or of any public governmental body including records created or maintained by private contractors under an agreement with a public governmental body. Under the plain language of the relevant statutes in chapter 610, an "electronically stored" record is a "record" and qualifies as a "public record" if "retained by or of any public governmental body" and not otherwise exempt or excluded from disclosure under any provision of the Sunshine Law. *See* secs. 610.010(6), 610.021, 610.022.5.[7] Because the statutory language is unambiguous and clearly evinces the legislative intent to make an "electronically stored" record a "record" subject to the Sunshine Law, and because an "electronically stored" record necessarily includes raw

---

[7] The Sunshine Law has been in effect since 1973, and Missouri courts have considered many Sunshine Law cases involving computer data, computer files, and other electronically stored records. *See, e.g.*, *Gross v. Parson*, 624 S.W.3d 877, 881-82 (Mo. banc 2021); *Webster Cnty. Abstract Co. v. Atkison*, 328 S.W.3d 434, 440 (Mo. App. 2010); *Jones v. Jackson Cnty. Cir. Ct.*, 162 S.W.3d 53, 60 (Mo. App. 2005).

data; computer files; and other files or documents stored in an electronic form, there is no need to resort to further statutory interpretation.[8] "The primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evidenced by the plain text of the statute." *Gross*, 624 S.W.3d at 884 (internal quotation omitted). A statute's words are "taken in their plain or ordinary and usual sense[.]" Sec. 1.090. "If the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then [this Court is] bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Smith v. St. Louis Cnty. Police*, 659 S.W.3d 895, 898 (Mo. banc 2023) (alteration in original) (internal quotation omitted). "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature." *Id.* (internal quotation omitted).

Under the plain language of the relevant statutes, the "raw data" files Weeks requested are a "record" or, more specifically, an "electronically stored" record and are not per se disqualified as a "public record" under section 610.010(6). In fact, the Sunshine Law explicitly encourages public governmental bodies to provide access in an electronic format to those public records kept in an electronic format and "to make information available in usable electronic formats to the greatest extent feasible" and

---

[8] *See Hemeyer v. KRCG-TV*, 6 S.W.3d 880, 882 (Mo. banc 1999) (declining to use dictionary to define "record" as used in chapter 610) ("True, the dictionary has a host of definitions of 'record,' some that stress permanency, and some that do not. To the extent the term 'record' in chapter 610 is ambiguous, the statutory mandate of liberal construction necessitates that a videotape retained for four-and-a-half days is a record." (internal citation omitted)).

further provides, "if the public governmental body keeps a record on a system capable of allowing the copying of electronic documents into other electronic documents, the public governmental body shall provide data to the public in such electronic format, if requested." Sec. 610.029.1.[9]

By the same token, "raw data" or other "electronically stored" records in a public governmental body's servers do not automatically qualify as a "public record" required to be produced under the Sunshine Law. Instead, the statutory definition of "public record" must be satisfied, and the actual request for records must be considered along with any applicable exemptions or exceptions raised by the public governmental body to determine whether a "public record" subject to disclosure has been requested. *See* secs. 610.021, 610.022.5.

Further, the Sunshine Law does not require a public governmental body to create a new record. *See Jones*, 162 S.W.3d at 60 ("The plain language of the Sunshine Law does not require a public governmental body to create a new record upon request, but only to provide access to existing records held or maintained by the public governmental body."). This is true "even if the new record could be created from information culled from existing records." *Id.* In *Jones*, the court concluded the plaintiff's request impermissibly required Jackson County to create "a new, customized record from information contained in its existing records." *Id.*; *see also Am. Fam. Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 914 (Mo. App. 2005) (The Missouri Department of Insurance did not have

---

[9] Section 610.026 sets out the fees for copying, searching, and researching public records, whether stored in a written or electronic format.

9

to create a new record to comply with the request when it "does not currently have the requested data but that it might be able to make such calculations from the data that it has. Legal Aid apparently wanted the trial court to order [the department] to analyze the zip code data and release a report[.]").

Analyzing Weeks' requests given these legal principles and while adhering to the Sunshine Law framework shows why no party has the right to summary judgment, at this stage of the proceedings, based on this record. Section 610.023 sets out a specific procedure for Sunshine Law requests and provides in part: "Each request for access to a public record shall be acted upon as soon as possible[.]" Sec. 610.023.3. In his November 2018 request to Webster Groves, Weeks requested "the annual 'raw' data files from the Vehicle Stop Forms[.]" In his July 2019 request to St. Louis County, Weeks requested "[f]iles of the databases containing data generated from vehicle stop forms[.]" In the body of the request, Weeks purported to clarify his request, stating he was requesting "files containing the databases … created from the raw data transmitted upon completion of the vehicle stop forms."

Examining the requests Weeks actually made to both Webster Groves and St. Louis County is critically important because those requests were at issue in the parties' motions for summary judgment—not what Weeks could have requested or intended to request. What Weeks actually requested was, as to Webster Groves, "data files from the Vehicle Stop Forms," and, virtually identically as to St. Louis County,

"data generated from vehicle stop forms[.]"[10] Although Weeks explicitly referenced the DSN in his requests, each DSN request was in relation to "data files from the Vehicle Stop Forms" and "data generated from vehicle stop forms." There is nothing in the summary judgment record to establish the DSN is "data files from the Vehicle Stop Forms" or "data generated from vehicle stop forms." It is conceivable, in response to a proper request, Webster Groves and St. Louis County may have to produce the DSN as a "public record" and may have to separately produce the vehicle stop forms as a "public record." It is also conceivable the parties did not plead the necessary uncontroverted material facts and the DSN is "data files from the Vehicle Stop Forms" or "data generated from vehicle stop forms."[11] But the present summary judgment record does not support the conclusion the DSN is a "public record" responsive to Weeks' request.

There is nothing in the summary judgment record to suggest that both the DSN and the vehicle stop form information exist currently together in any record, and a public governmental body does not have to create a new record. *Jones*, 162 S.W.3d at 60. This is true even when, as here, the record shows a new record could be created and at

_____

[10] Public governmental bodies must be able to review and rely on each request actually made in seeking to understand and fulfill their statutory duties under the Sunshine Law. This is particularly important given that a public governmental body is subject under section 610.027 to potential monetary civil penalties, costs, and reasonable attorney fees for violation of the Sunshine Law.

[11] St. Louis County and Webster Groves must have some officer-specific way of ensuring compliance with section 590.650, but the present record does not support the conclusion the DSN in fact is "data files from the Vehicle Stop Forms" or "data generated from vehicle stop forms." Weeks requested only records related to the vehicle stop forms.

11

arguably minimal cost.[12]  The Sunshine Law provides for open public records but does not put the government in the business of creating records not stored in the normal course.  From the present record, there is no basis for this Court to conclude this case is not exactly like *Jones* and that Weeks is not impermissibly asking Webster Groves and St. Louis County to create "a new, customized record from information contained in its existing records."  *Id.*[13]

The issue then becomes whether the circuit court correctly concluded Webster Groves and St. Louis County established entitlement to summary judgment as a matter of law based on the uncontroverted material facts.  Rule 74.04(c)(6).  Whether the DSN is a "public record" is an issue of law this Court need not and does not reach because no party has established as an uncontroverted material fact that the DSN is "data generated from vehicle stop forms" or "data files from the Vehicle Stop Forms," as requested by Weeks, and that any party has the right to judgment as a matter of law.[14]

---

[12] Requiring creation of a new record, even from existing "raw data" or other computer files, would place immense burden on public governmental bodies because the time and expense involved in the usual case likely would not be minimal.  For example, St. Louis County produced close to 290,000 traffic stop files to Weeks in approximately 13,783 pages.

[13] Like this case, *Jones* involved existing computer files, and the court of appeals appropriately rejected the argument the public governmental body had to create a new record from existing computer files.  *Jones*, 162 S.W.3d at 59-60.  The same analysis should apply here because nothing in the present record establishes there is an existing record containing both the DSN and the vehicle stop form information.

[14] None of the parties' statements or citations to the record demonstrate the uncontroverted material facts establish the DSN is "data generated from vehicle stop forms" or "data files from the Vehicle Stop Forms," even if the DSN is located in REJIS' servers.  Weeks argues:  "When information about a vehicle stop is forwarded to REJIS,

12

In the same way the Sunshine Law at section 610.023.3 dictates consideration of "[e]ach request," Rule 74.04 and Missouri law concerning summary judgment dictate a well-defined, specific procedure for any party to obtain summary judgment. *See Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020) ("Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." (internal quotation omitted)). In this case, no party has demonstrated the right to summary judgment on the record before this Court. The DSN may be a "public record" responsive to Weeks' request, but the record before this Court does not permit that legal conclusion at this stage in the litigation.[15]

St. Louis County alternatively asserts the DSN is exempt from disclosure in any event under subsections (3) and (13) of section 610.021. Section 610.021(3) provides, in relevant part, a public governmental body may close records "to the extent they relate to … [h]iring, firing, disciplining or promoting of particular employees by a public

---

the officer's DSN is transmitted with all other information gathered about that stop." But REJIS' representative actually testified: "The DSN is part that's required before a record is created." St. Louis County argues that Weeks, in relying on the REJIS representative's testimony, "wrongly implies that DSNs are necessary parts of a traffic stop reports [*sic*] rather than a way to access the REJIS database to make such entries by an individual police officer."

[15] To the extent any party asserts the DSN is not a "public record" under the Sunshine Law because the DSN is not listed among the information that must be contained in the report to the attorney general under section 590.650, this is incorrect as section 590.650 does not govern what is or is not a "public record" under chapter 610. "Public records shall be presumed to be open unless otherwise exempt pursuant to the provisions of *this chapter*." Sec. 610.022.5 (emphasis added). However, as set out in this opinion, whether the DSN is required information under section 590.650 is relevant to whether Webster Groves or St. Louis County has records responsive to Weeks' requests because Weeks requested the DSN only in the vehicle stop forms at issue in section 590.650.

13

governmental body when personal information about the employee is discussed or recorded … . As used in this subdivision, the term **'personal information'** means information relating to the performance or merit of individual employees[.]" Section 610.021(13) provides a public governmental body may close records "to the extent they relate to …. [i]ndividually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment[.]"

For a record to be exempt from disclosure under section 610.021, the public governmental body must show the record in question relates directly to or has a clear nexus to the invoked exemption. *See, e.g.*, *Spradlin v. City of Fulton*, 982 S.W.2d 255, 259 (Mo. banc 1998) (noting the public body challenging disclosure must show the challenged record "relate[s] directly" to the invoked exemption); *Wyrick v. Henry*, 592 S.W.3d 47, 57 (Mo. App. 2019) (holding records must have a "clear nexus" to the claimed section 610.021 exemption); *Tuft v. City of St. Louis*, 936 S.W.2d 113, 118 (Mo. App. 1996) (holding the public body bears a heavy burden in showing a "clear nexus" between the challenged record and invoked exemption). To promote the general policy of disclosure under the Sunshine Law, section 610.011.1 states that "[s]ections 610.010 to 610.200 shall be liberally construed and their exceptions strictly construed[.]" This Court has long recognized section 610.011's command and has required the exemptions to disclosure in section 610.021 to be strictly construed to give effect to the public policy of the Sunshine Law. *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 414 (Mo. banc 2001).

St. Louis County argues the DSN is "personal information" because it is used to determine and evaluate performance of an officer, such as whether he or she is complying

14

with traffic stop reporting requirements under section 590.650 and whether the officer has disproportionately stopped members of minority groups. St. Louis County further argues the DSN is keyed to an employee's personnel records, performance ratings, disciplinary records, and other records that relate to the performance of the employee.

At this stage of the proceedings, St. Louis County has not shown the DSN has a clear nexus to or is related directly to either exemption. The summary judgment record is devoid of evidence the DSN has a clear nexus to or relates directly to any action involving the hiring, firing, disciplining, or promoting of any employees; the merit or performance of any employee; or any individually identifiable personnel record. The summary judgment record does not show the DSN is part of a personnel file. All St. Louis County has indicated is that an officer, identified by his or her DSN, *may* be disciplined or promoted based on his or her compliance or noncompliance with section 590.650 and that a DSN, by definition, identifies individual police officers. These facts alone are insufficient to establish the type of clear nexus or direct relationship the Sunshine Law exemptions require to close a public record under section 610.021.

Considering the actual requests Weeks made, it is unclear from the summary judgment record whether the DSN is or is not "data generated from vehicle stop forms" or "data files from the Vehicle Stop Forms," whether the DSN exists in a useable form that may be shared with Weeks, whether Webster Groves or St. Louis County would have to create a new record in contravention of the Sunshine Law to comply with Weeks' actual requests, or whether any exemption to disclosure applies if the DSN is a "public record." These issues must be resolved on remand.

15

## Conclusion

This Court vacates the circuit court's judgment for Webster Groves and St. Louis County and remands the case for further proceedings consistent with this opinion.

_____
Ginger K. Gooch, Judge

Fischer, Ransom and Broniec, JJ.,
concur; Russell, C.J., concurs in part
and dissents in part in separate opinion
filed; Powell and Wilson, JJ., concur
in opinion of Russell, C.J.



## SUPREME COURT OF MISSOURI
## en banc

PHILLIP WEEKS,             )
                            )
          Appellant,       )
                            )
v.                           )        No. SC100427
                            )
ST. LOUIS COUNTY, MO.,     )
CITY OF UNIVERSITY CITY, MO., )
CITY OF WEBSTER GROVES, MO., )
                            )
          Respondents,   )
                            )
                            )
AND REGIONAL JUSTICE      )
INFORMATION SERVICES     )
COMMISSION (REJIS),        )
                            )
          Defendant.    )

## SEPARATE OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur in the principal opinion's holding that the judgment for Webster Groves

and St. Louis County should be vacated and the case remanded for further proceedings. I

also concur with the principal opinion that St. Louis County is not entitled to summary

judgment because it has not established the Department Serial/Service Number ("DSN")

has a clear nexus or relates directly to a section 610.021[1] exemption. But I respectfully

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated. All references to section 610.021 are to RSMo Supp. 2018.

disagree with the principal opinion's conclusion that the summary judgment record does not establish that the DSN is "data generated from vehicle stop forms" or "data files from Vehicle Stop Forms." Further, Weeks' request did not require the creation of a new record.

The principal opinion concludes the summary judgment record does not support a finding that the DSN is a "public record" responsive to Weeks' request. The summary judgment record, however, shows Weeks indisputably requested the vehicle stop data, including the DSN.

From Webster Groves, Weeks requested "the annual 'raw' data files from the Vehicle Stop Forms with all columns *including the DSN/PIN*, that REJIS uses to compile the stats for the annual Vehicle Stop Reports for the Webster Groves Police Department for the years 2014-2017, and the monthly data for 2018." (Emphasis added). From St. Louis County, Weeks requested, "Files of the databases containing data generated from vehicle stop forms for 2014 through and including 2018, *including officer PINs/DSNs*, that are kept pursuant to Mo. Rev. Stat. § 590.650." (Emphasis added).

The principal opinion contends there is nothing in the summary judgment record to establish the DSN is "data files from the Vehicle Stop Forms" or "data generated from vehicle stop forms." But the record establishes REJIS held such data and the officer DSN on its servers on behalf of the political subdivisions. The following facts are uncontroverted based on the parties' statements of uncontroverted material facts. When Webster Groves police officers made vehicle stops that must be reported pursuant to

2

section 590.650, the officers either: (1) electronically recorded the required data into their mobile data terminals in their vehicles using REJIS' Traffic Analysis system or LEWeb, or (2) recorded the data on handwritten forms that later were entered electronically by a record clerk. The Traffic Analysis system displayed all stops entered into the system for each officer based on his or her DSN. After a Webster Groves officer electronically entered the required data into the data fields pursuant to section 590.650.2 or a record clerk electronically entered the data from the handwritten form, the data was submitted electronically to REJIS. REJIS collected and compiled the electronic data received so Webster Groves could submit an annual report to the attorney general pursuant to section 590.650.3. A stopping officer's DSN was also transmitted to REJIS' servers when officers inputted the information required for the vehicle stop report and was required before the record was created.[2] As to Webster Groves, therefore, the DSN is "data files from the Vehicle Stop Forms."

---

[2] In a deposition, REJIS' chief information officer explained the DSN is collected as part of vehicle stop records:

> **[Weeks' Counsel]:** Okay. Can you talk about a traffic analysis system? Is that the same as the vehicle stop information system?
> **[REJIS chief of information]:** Yes. It -- I call it traffic analysis or vehicle stop data, correct.
> **[Weeks' Counsel]:** Okay. I just want to make sure we're on the same page.
>       And is one of the pieces of information about each vehicle stop the DSN or the PIN or some other designation for each officer making a stop?
> **[REJIS chief of information]:** Yes, the DSN is tracked, correct.
> **[Weeks' Counsel]:** So is it fair to say that information is not -- a vehicle stop is not complete until an officer is identified?
> **[REJIS' Counsel]:** I'm going to object to the form of the question in as much as I'm not sure it's clear about whether he's asking whether officer's

3

Moreover, section 590.650 requires the adoption of a policy permitting the law enforcement agency to determine whether any peace officer is found to have engaged in race-based traffic stops and to provide training and instruction for "understanding and respect for racial and cultural differences[.]" Section 590.650.5. Inherent in this requirement is that the law enforcement agencies have identifying information, such as the DSN, tied to each traffic stop.

St. Louis County also used the DSN to comply with section 590.650.5's mandate. St. Louis County acknowledged it "use[d] the CSV files containing traffic stop data coupled with the DSN of each police officer that correlate[d] to each traffic stop to evaluate each police officer's compliance with [St. Louis County's policy adopted to comply with section 590.650]." As such, the DSN, inherently, is a part of "data files of the databases containing data generated from vehicle stop forms … that are kept pursuant to Mo. Rev. Stat. § 590.650."

Because REJIS collects and stores the DSN on its servers on behalf of Webster Groves and St. Louis County, it is a "public record." Moreover, the DSN collected by REJIS' software during vehicle stops is "data files from the Vehicle Stop Forms" and

---

DSN is required as a software function or as a legal matter. And I think -- I'd ask the -- I'd ask the questioner to rephrase your question accordingly.
**[Weeks' Counsel]:** Well, I'm not going to rephrase it. I'm not asking him to give me a legal opinion. I'm just asking him how his system works.
**[REJIS' Counsel]:** So you are asking about technical information, okay.
**[Weeks' Counsel]:** Yes.
**[REJIS chief information officer]:** Yes. The DSN is part that's required before a record is created.

"data generated from vehicle stop forms." The vehicle stop data, including the DSN,

collected and retained by Webster Groves and St. Louis County through REJIS are

electronic records and subject to disclosure under the Sunshine Law.

The next issue is whether Weeks' request required Webster Groves to create a new

record.[3] The principal opinion states there is nothing in the record that permits this Court

to conclude this case is not the same as *Jones v. Jackson County Circuit Court*, 162

S.W.3d 53 (Mo. App. 2005), and that Weeks' request did not require the creation of a

new record. Although the Sunshine Law does not obligate a public governmental body to

produce a record that is not already in existence, this case is distinguishable from the

court of appeals opinion in *Jones*.

In *Jones*, the plaintiff filed a petition for mandamus and an injunction against

various entities, including the Jackson County circuit court, for violating the Sunshine

Law by failing to provide information concerning landlord petitions and complaints for

rent and possession, unlawful detainer, and damages for breach of lease or rental

agreements. *Id.* at 56. Specifically, he requested:

> [R]ecords containing specific information about these types of cases,
> including the date the case was filed; the case style; the names and addresses
> of the plaintiff and defendant; the assigned court; the case number; the party

---

[3] The principal opinion also holds there is no basis for this Court to conclude Weeks was
not impermissibly asking St. Louis County to create a new record. But whether Weeks'
request required St. Louis County to create a new record is not an issue before this Court.
St. Louis County does not contend Weeks impermissibly required it to create a new
record. St. Louis County instead argues: (1) Weeks is not entitled to the DSN because
the DSN is not kept or substantively associated with records or data kept pursuant to
section 590.650; and (2) a section 610.021 disclosure exemption applies. Indeed, St.
Louis County initially produced the records responsive to Weeks' request, including the
DSN.

5

against whom judgment was entered; the date the judgment was entered; the amount of the judgment; the date the judgment was satisfied; disposition of the petition; and the case type.

*Id.* On appeal, the plaintiff argued he was not asking the circuit court to create new records but to retrieve records already in existence in a different form. *Id.* at 58. The court of appeals held, "Applying the plain meaning of the word 'retain,' the definition of 'public record' includes only those records—either written or electronic—that are already in existence that the public governmental body is '**holding**' or '**maintaining**' in its possession." *Id.* at 59 (emphasis added). *Jones* further explained nothing in the definition of "public records" indicated it included written or electronic records "that [could] be created by the public governmental body, even if the new record could be created from information culled from existing records." *Id.* at 60. The court of appeals noted the plaintiff did not argue the Jackson County circuit court denied him access to existing records. *Id.* at 59. Instead, the plaintiff alleged the circuit court violated the Sunshine Law "by failing to create a new, customized record containing only the specific information he requested[.]" *Id.* at 60. Unlike in *Jones*, Weeks has not requested Webster Groves create a new, customized record containing specific information.[4]

The principal opinion also cites *American Family Mutual Insurance Company v. Missouri Department of Insurance*, 169 S.W.3d 905 (Mo. App. 2005), in support of its

---

[4] This reasoning is consistent with other states' approaches to database searches. *See e.g., State ex rel. Shaughnessy v. Cleveland*, 76 N.E.3d 1171, 1174 (Ohio 2016) (holding a public records request for police incident reports involving specified crimes but excluding certain subsets of crimes was improper because "[t]he Public Records Act does not compel a public office to do research or to identify records containing selected information" (internal quotations omitted)).

argument that the Sunshine Law does not obligate a public body to create a customized report. In *American Family*, Legal Aid sought market share data from the Missouri Department of Insurance relating to residential insurance issued in minority-populated zip codes in Kansas City. *Id.* at 908. The court of appeals held the circuit court did not err in overruling Legal Aid's post-trial motion asking the circuit court to allow the release of the data because the record reflected the requested data was not contained in an existing record. *Id.* at 915. In support of its holding, the court noted the record reflected "that [the department] does not currently have the requested data but that it might be able to make such calculations from the data it has" and that "Legal Aid apparently wanted the trial court ***to order [the department] to analyze the zip code data and release a report***[.]" *Id.* at 914 (emphasis added). Unlike in *American Family*, Weeks is not asking Webster Groves to generate new data by making calculations or analyzing previously recorded data.[5] Weeks was asking for data: (1) Webster Groves recorded on vehicle stop forms through REJIS' software, and (2) is currently stored by REJIS for the benefit of Webster

---

[5] In *American Family*, Legal Aid wanted [the department] to essentially generate new records by analyzing existing data. 169 S.W.3d at 914. Many state courts have, like in *American Family*, found public records requests that require a governmental body to analyze or summarize information about existing records involve the creation of a new record. *See Comptroller of Treasury v. Immanuel*, 85 A.3d 878, 886 (Md. Ct. Spec. App. 2014) (explaining that, had a request for data required the governmental body to perform calculations with the data, summarize or analyze the data, or to extract or sort the data beyond the existing capabilities of the database, such request might have required the creation of a new record); *Chicago Trib. Co. v. Dep't of Fin. & Prof'l Regul.*, 8 N.E.3d 11, 19 (Ill. App. Ct. 2014) (finding the plaintiff's request for the number of initial claims a governmental body received would have required the governmental body to review its files and tally the initial claims made, and, therefore, did not seek an existing public record).

Groves.  Although *Jones* held the definition of "public records" does not include written

or electronic records that *can* be created by a public governmental body from information

culled from existing records, that was not what Weeks requested.  Weeks was seeking an

already existing "public record"—the vehicle stop data REJIS retained electronically on

behalf of Webster Groves—to be produced in a usable format.[6]

---

[6] Interpreting the Freedom of Information Act ("FOIA"), a federal court recognized that searching a database to respond to a FOIA request was not the creation of a new record. *Nat'l Se. Couns. v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("Computer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information .... [T]he review of computerized records would not amount to the creation of records." (alterations in original) (quoting H.R. Rep. 104-785, at 22 (1996)).  The court noted, however, that in responding to a FOIA request for "aggregate data," an agency was not required to create a new database or reorganize its method of archiving data.  *Id.*  But "if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record."  *Id.*  Sorting a database by a particular data field—such as date or category—is a form of "searching" that was part of an agency's duty in responding to a FOIA request.  *Id.*  But a FOIA request for a listing or index of a database that seeks not the content of a database but instead seeks information *about* the database's contents, would require the creation of a new record if the agency did not already retain such a listing or index.  *Id.* at 271.  The example the court provided was a FOIA request seeking "an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis."  *Id.* (internal quotations omitted).  An agency would not need to create an inventory if it did not already exist, but the agency would be required to release any records themselves if they existed and were not exempt from disclosure.  *Id.*; *see also Ariz. Dep't of Child Safety*, 377 P.3d 339, 347 (Ariz. Ct. App. 2016) (holding "Arizona's public records law does not, however, require an agency to create a new record that compiles information about information maintained electronically, or, indeed, paper," noting "[s]earching an electronic database to produce existing records and data is not the same as searching an electronic database to compile information about the information the database contains").

Additionally, in *Arizona Department of Child Safety*, 377 P.3d at 342, the ACLU of Arizona sought records concerning child welfare services that required the department of child safety to tally or compile numerical or statistical information and percentages.  For example, one request asked the department of child safety to provide "'[t]he number of children who were substantiated victims of abuse and/or neglect perpetrated by their caregiver(s) while placed' in out-of-home: (a) unlicensed foster care; (b) licensed foster

8

If Weeks were seeking information Webster Groves maintained in physical documents in a file cabinet, then such information would indisputably be subject to disclosure. In that scenario, Webster Groves would have to review the file and copy the documents for production. Such copying would not be the creation of a new record. Section 610.026 ("[E]ach public governmental body shall provide access to, and, upon request, furnish copies of public records[.]"); *see also Immanuel*, 85 A.3d at 886 (hypothesizing the only functional difference between a request for physical documents and data "is that IT professionals would perform here the work that clerical professionals would perform on a paper file"). In other words, Weeks is seeking an existing "public record." Extracting existing data into a useable electronic format is not the creation of a new record. Holding otherwise essentially prohibits access to public records maintained in a public governmental body's database.

Because there are no remaining questions of material facts, Webster Groves' and St. Louis County's summary judgment motions fail as a matter of law. The circuit court's grant of summary judgment in Webster Groves' and St. Louis County's favor should be vacated.

---

care; (c) congregate care." *Id.* (alterations in original). The court held the department's case management system was a public record, and Arizona's public records law required an agency to search its electronic database for public records. *Id*. at 344-45. But Arizona public records law did not require the department to tally or compile previously untallied and uncompiled information or data to respond to a public records request. *Id*. at 345. Such would require the department to create a new record. *Id*. at 347.

For these reasons, I concur with the principal opinion's remand of the case as to both Webster Groves and St. Louis County.

 

_____

Mary R. Russell, Chief Justice